## STATE OF CONNECTICUT *v.* MICHAEL C. STORY
## (AC 17763)

Foti, Landau and Hennessy, Js.

---

Argued December 14, 1998—officially released June 15, 1999

*M. Donald Cardwell*, for the appellant (defendant).

*Christopher T. Godialis*, assistant state's attorney, with whom, on the brief, were *James E. Thomas*, state's attorney, and *Carl E. Taylor*, senior assistant state's attorney, for the appellee (state).

*Opinion*

FOTI, J. The defendant, Michael C. Story, appeals from the judgment of conviction, rendered after a conditional plea of nolo contendere pursuant to General Statutes § 54-94a,[1] of possession of narcotics with intent to

---

[1] General Statutes § 54-94a provides: "When a defendant, prior to the commencement of trial, enters a plea of nolo contendere conditional on the

sell in violation of General Statutes § 21a-277 (a). On appeal, the defendant claims that the trial court improperly denied his motion to suppress evidence when it concluded that (1) his detention by police following a traffic stop was not unjustifiably prolonged and (2) he had voluntarily consented to a search of his vehicle. We affirm the judgment of the trial court.

The trial court found the following facts from the evidence adduced at the suppression hearing. On April 13, 1994, Trooper James Keeney of the Connecticut state police was conducting stationary radar surveillance on Interstate 84 westbound in East Hartford. He clocked the defendant's vehicle traveling eighty-two miles per hour in a posted fifty-five mile per hour zone. Keeney stopped the vehicle without incident and, prior to approaching, called headquarters by radio and verified that the vehicle was not stolen or otherwise wanted by the police.

Keeney then approached the vehicle, briefly interviewed the occupants and obtained identification from each party. The vehicle was occupied by the defendant, who was driving, and a companion, Charles Harris. Both the defendant and Harris are physically imposing, each standing well over six feet and weighing about 300 pounds. Keeney then returned to his cruiser to write a citation for the defendant's speeding infraction. He again radioed headquarters requesting information about the defendant and Harris, specifically whether

right to take an appeal from the court's denial of the defendant's motion to suppress evidence based on an unreasonable search or seizure, motion to suppress statements and evidence based on the involuntariness of a statement or motion to dismiss, the defendant after the imposition of sentence may file an appeal within the time prescribed by law. The issue to be considered in such an appeal shall be limited to whether it was proper for the court to have denied the motion to suppress or the motion to dismiss. A plea of nolo contendere by a defendant under this section shall not constitute a waiver by the defendant of nonjurisdictional defects in the criminal prosecution."

there were any outstanding warrants for their arrest. He received a negative response.

Trooper Marlon Drummond overheard Keeney's radio transmissions and drove to the scene to provide assistance. When he arrived, Keeney was still in his cruiser writing the citation. Keeney then went to the driver's side of the defendant's vehicle and presented him with the citation. Drummond proceeded to the passenger side. Prior to approaching, Keeney resolved to ask the defendant for permission to search the vehicle. He did not believe that he had probable cause to justify a search or even an articulable suspicion of wrongdoing. He was merely proceeding on a hunch that he might find contraband in the vehicle. Keeney felt that there were two other factors essential to that decision. It was the middle of the night when traffic was slow, so he had time to linger over the stop, and he had a backup present.

Keeney gave the defendant the citation and asked him to step out of the vehicle. The defendant complied. The officers were armed and in uniform, but their guns were holstered. Keeney then asked the defendant if there were any illegal substances in the car and the defendant replied that there were not. Keeney asked the defendant if he could search the vehicle and the defendant replied, "Go ahead—no problem." Drummond overheard Keeney's request as well as the defendant's reply. At that time, the defendant was not in custody and would have been free to leave if he had refused permission. Drummond then escorted Harris to the front of the vehicle and kept him occupied during the search that ensued.

The defendant unlocked the trunk of the car with a key at Keeney's request. A search of the trunk revealed a bag which contained a substance that the defendant admitted was cocaine. He also stated that there were

more drugs in the console between the front seats of the car. Keeney immediately informed the defendant that he was under arrest and handcuffed him. Keeney then ordered Drummond to arrest Harris, which he did. Keeney then searched the vehicle and discovered the additional cocaine in the vehicle's console.

## I

The defendant first argues that the warrantless search of his vehicle was unreasonable under the fourth amendment to the United States constitution and article first, § 7, of the constitution of Connecticut[2] because he did not voluntarily consent to the search. This claim is based, specifically, on the defendant's assertion that he was detained for an unreasonably long period of time and because he was not told that he was free to leave after the citation was issued.[3] We do not agree.

A warrantless search is not unreasonable under the fourth amendment to the United States constitution when a person with authority to do so has freely consented. State v. Martinez, 49 Conn. App. 738, 743, 718 A.2d 22, cert. denied, 247 Conn. 934, 719 A.2d 1168 (1998). "The question of whether a defendant has given voluntary consent to . . . search . . . is a question of fact to be determined by the trial court by considering the totality of the circumstances surrounding the . . .

[2] The defendant invokes both the United States constitution and the Connecticut constitution in support of the claims in his brief. At oral argument, however, he conceded that he did not adequately brief his claims under our state constitution. We, therefore, decline to review them and address only his federal constitutional claims. See State v. Joyce, 243 Conn. 282, 288 n.6, 705 A.2d 181 (1997), cert. denied, 523 U.S. 1077, 118 S. Ct. 1523, 140 L. Ed. 2d 674 (1998).

[3] During oral argument, the defendant requested that we set forth a "bright-line" rule requiring all persons stopped for motor vehicle traffic violations to be informed that they need not give consent to search, and that they are free to go before a consent to search may be deemed voluntary. The defendant concedes that he did not brief this claim and raised it for the first time at oral argument. We, therefore, decline to review this claim.

search." *State* v. *Vargas*, 34 Conn. App. 492, 496, 642 A.2d 47, cert. denied, 230 Conn. 907, 644 A.2d 921 (1994). "The voluntariness of the consent is normally decided by the trial court based on the evidence it deems credible along with the reasonable inferences that can be drawn therefrom." *State* v. *Ortiz*, 17 Conn. App. 102, 103–104, 550 A.2d 22, cert. denied, 209 Conn. 828, 552 A.2d 1216 (1988).

In this case, the trial court made specific findings regarding the defendant's consent to search. In its memorandum of decision, the trial court found that the defendant stepped out of the car when asked and said, "Go ahead—no problem," when asked by Keeney if he could search the vehicle. At that time, the defendant was not in custody and would have been free to leave if he had refused permission. The colloquy between the defendant and Keeney was overheard by Drummond.

While the defendant concedes that the initial stop of his vehicle was lawful, and that his initial detention was proper, he argues that once the citation was issued, the detention became improper. He argues that the police unjustifiably prolonged his seizure after they issued the traffic citation. The trial court found, however, that the defendant was not in custody, was free to leave, voluntarily exited the vehicle and then gave his consent to search. The trial court found the testimony of Keeney and Drummond to be credible and that, by contrast, "the defendant's testimony lacked plausibility and consistency in certain key respects." We do not retry the case or evaluate the credibility of witnesses but, rather, defer to the trial court's assessment of the credibility of the witnesses based on its firsthand observation of their conduct, demeanor and attitude. *State* v. *Martinez*, supra, 49 Conn. App. 745.

The issue in this case is not one initially of seizure; the defendant was "seized" the moment his vehicle was

stopped. See *Delaware* v. *Prouse*, 440 U.S. 648, 653, 99 S. Ct. 1391, 59 L. Ed. 2d 660 (1979). The issue raised by the dissent is one of a subsequent seizure after the citation was issued. Was the defendant "seized" when he was asked to step out of the car, and therefore in custody? The question is not whether he first gave his consent to search, and then was asked to step out of the vehicle. Rather, the question is whether, at the time he was asked to exit his vehicle, he was free to leave.

What starts out as a consensual encounter becomes a seizure if, on the basis of a show of authority by the police, a reasonable person in the defendant's position would have believed that he was not free to leave. *State* v. *Ostroski*, 186 Conn. 287, 292, 440 A.2d 984, cert. denied, 459 U.S. 878, 103 S. Ct. 173, 74 L. Ed. 2d 142 (1982). Whether, in view of all the circumstances surrounding the incident, a reasonable person would have believed that he was not free to leave presents a mixed question of law and fact qualifying for independent review. *State* v. *James*, 237 Conn. 390, 405–406, 678 A.2d 1338 (1996). Whether a restraint on freedom of movement existed is "factual and will not be overturned unless it is clearly erroneous." *State* v. *Walton*, 41 Conn. App. 831, 836, 678 A.2d 986 (1996).

"Our standard of review of a trial court's findings and conclusions in connection with a motion to suppress is well defined. A finding of fact will not be disturbed unless it is clearly erroneous in view of the evidence and pleadings in the whole record . . . . [W]here the legal conclusions of the court are challenged, we must determine whether they are legally and logically correct and whether they find support in the facts set out in the memorandum of decision . . . ." (Citations omitted; internal quotation marks omitted.) *State* v. *Colvin*, 241 Conn. 650, 656, 697 A.2d 1122 (1997).

The trial court's factual findings are not clearly erroneous, nor does the defendant claim that they are as

relative to his being free to leave at any time or his voluntarily exiting his car. The defendant neither contests the legality of the stop, nor contends that his will was overborne. He argues only that he never consented to the search. "Whether there was valid consent to a search is a factual question that will not be lightly overturned on appeal." *State* v. *Zarick,* 227 Conn. 207, 226, 630 A.2d 565, cert. denied, 510 U.S. 1025, 114 S. Ct. 637, 126 L. Ed. 2d 595 (1993). The trial court's factual findings clearly lead to the conclusion that the defendant's will was not overborne, and that the consent, both in exiting of the vehicle and to the search, was his unconstrained choice.

The dissent would have us, as an appellate court, preclude the trial court, once the reason for the initial stop has been completed, from determining whether the police overreached, by their request to exit the vehicle, into constitutional voluntariness. See *State* v. *Northrop,* 213 Conn. 405, 419, 568 A.2d 439 (1990). We conclude, however, that the trial court properly applied the legal standard to the facts and concluded that the defendant voluntarily exited the vehicle and voluntarily consented to the search. He was free to leave at any time and was not in custody. Accordingly, we conclude that the defendant's consent to search was not obtained in violation of the fourth amendment.

## II

The defendant next argues that the search of his vehicle was unreasonable because he did not voluntarily consent to the search. Specifically, he argues that his will was overborne by the officers. We do not agree.

In making our inquiry, "[t]he ultimate question 'is whether the will of the consenting individual was overborne, or whether the consent was his unconstrained choice.' *State* v. *Cobbs,* 7 Conn. App. 656, 659, 510 A.2d 213 (1986)." *State* v. *MacNeil,* 28 Conn. App. 508, 514,

613 A.2d 296, cert. denied, 224 Conn. 901, 615 A.2d 1044 (1992). Here, there is no evidence that the officers employed a coercive or deceptive procedure to obtain the defendant's consent, nor is there any evidence that the defendant did not feel free to leave after the summons had been issued; he was neither threatened nor was he blocked from leaving.

On the basis of these facts, the trial court's finding that, under the totality of the circumstances, the defendant voluntarily consented to a search of his vehicle, was not clearly erroneous. It, therefore, properly denied the defendant's motion to suppress.

The judgment is affirmed.

In this opinion LANDAU, J., concurred.

HENNESSY, J., dissenting. I respectfully dissent from the majority opinion because I believe that the majority did not fully address the defendant's first claim. The defendant claims that he was unlawfully seized in violation of the fourth amendment to the United States constitution[1] because he was detained after the purpose of the stop was effectuated without further justification.[2] I believe that the majority improperly defers to the trial court's finding that "[a]t the time Trooper [James] Keeney asked for permission to search the car, the

---

[1] "The fourth amendment to the United States constitution, made applicable to the states through the due process clause of the fourteenth amendment in *Wolf* v. *Colorado*, 338 U.S. 25, 28, 69 S. Ct. 1359, 93 L. Ed. 1782 (1949), provides in pertinent part: 'The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated . . . .' " *State* v. *Cofield*, 220 Conn. 38, 46 n.7, 595 A.2d 1349 (1991).

[2] The defendant also claims a violation under article first, § 7, of the Connecticut constitution. As indicated in the majority opinion, the defendant conceded at oral argument that he did not adequately brief the state constitutional claim and, therefore, this court is not bound to consider the state constitutional claim. See *State* v. *Blocker*, 46 Conn. App. 734, 738 n.7, 700 A.2d 1186, cert. denied, 243 Conn. 946, 704 A.2d 799 (1997).

defendant was not in custody and would have been free to leave if he had refused permission" and, as a result, improperly focuses on the voluntariness of the defendant's consent *to search* rather than on the unlawfulness of the defendant's seizure.

The defendant does not dispute that the trooper had probable cause to stop him and to detain him for speeding.[3] The defendant argues that the trooper unjustifiably prolonged the detention *after* the trooper returned his identification and gave him the traffic citation. He further argues that it was during this unlawful detention that the trooper asked for consent to search the vehicle and, therefore, any evidence seized during the search was the result of that unlawful detention. I agree with the defendant.

While the trial court found that "the defendant was not in custody and would have been free to leave if he had refused permission," the trial court found historical facts that do not support that finding. Specifically, the trial court also found that "[a]*fter giving the ticket to the defendant,* Trooper Keeney asked him to step out of the vehicle. The defendant complied. At that time, both troopers were armed and in uniform, but their guns were holstered. Trooper Keeney then asked the defendant if there were any illegal substances in the vehicle. The defendant replied that there were not. Keeney asked if he could search it. The defendant replied, 'Go ahead—no problem.' " (Emphasis added.) The trial court further found that the trooper "did not

---

[3] The stopping of a motor vehicle and the detention of its occupants is a seizure within the meaning of the fourth and fourteenth amendments. *Delaware* v. *Prouse,* 440 U.S. 648, 653, 99 S. Ct. 1391, 59 L. Ed. 2d 660 (1979). "As a general matter, the decision to stop an automobile is reasonable where the police have probable cause to believe that a traffic violation has occurred." *Whren* v. *United States,* 517 U.S. 806, 810, 116 S. Ct. 1769, 135 L. Ed. 2d 89 (1996).

believe that he had probable cause to justify a search, nor did he even have an articulable suspicion of wrongdoing. Rather, he had a 'hunch' that he might find contraband in the vehicle." The court also indicated that Keeney articulated two other factors for his decision to detain the defendant further: "[I]t was the middle of the night, when traffic was slow, and he had time to linger over this case, and he had a backup present in Trooper [Marlon] Drummond."

"The trial court's findings of historical fact regarding the defendant's encounter with police . . . will not be overturned unless they are clearly erroneous. On the ultimate question of whether a seizure occurred, however, we conduct a scrupulous, independent review of the record to ensure that the trial court's determination was supported by substantial evidence." *State* v. *James*, 237 Conn. 390, 405–406, 678 A.2d 1338 (1996); see also *State* v. *Damon*, 214 Conn. 146, 154, 570 A.2d 700, cert. denied, 498 U.S. 819, 111 S. Ct. 65, 112 L. Ed. 2d 40 (1990). After a scrupulous examination of the record, I conclude that the trial court's finding that the defendant was "not in custody and would have been free to leave if he had refused permission" is not supported by substantial evidence. The testimony indicates that the historical facts found by the trial court, as previously indicated, are not clearly erroneous and, therefore, I rely on the chronology of Keeney's actions as found by the trial court.[4]

---

[1] I note that there was some inconsistency with both the defendant's and Keeney's testimony with regard to the chronology of Keeney's actions. At some point during their testimony, however, they both stated that Keeney ordered the defendant out of the vehicle before questioning him about the contraband and asking to search the vehicle. "The trial court's findings are binding upon this court unless they are clearly erroneous in light of the evidence and the pleadings in the record as a whole. . . . We cannot retry the facts or pass on the credibility of the witnesses. . . . A finding of fact is clearly erroneous when there is no evidence in the record to support it . . . or when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a

Because the trooper's justification to stop the defendant arose from his probable cause to believe that the defendant was speeding, I believe that the justification for the traffic stop ended when the trooper returned the paperwork to the defendant and issued the defendant a citation. See *Florida* v. *Royer*, 460 U.S. 491, 500, 103 S. Ct. 1319, 75 L. Ed. 2d 229 (1983) ("investigative detention must be temporary and last no longer than is necessary to effectuate the purpose of the stop"); see also *Terry* v. *Ohio*, 392 U.S. 1, 20, 88 S. Ct. 1868, 20 L. Ed. 2d 889 (1968) (officer's action must be "reasonably related in scope to the circumstances which justified the interference in the first place"); *United States* v. *Sharpe*, 470 U.S. 675, 682, 105 S. Ct. 1568, 84 L. Ed. 2d 605 (1985) (same). Because the trial court found, and the evidence supports, that Keeney did not have probable cause or a reasonable and articulable suspicion of any further criminal activity,[5] for the prolonged deten-

mistake has been committed." (Internal quotation marks omitted.) *McNeil* v. *Riccio*, 45 Conn. App. 466, 472, 696 A.2d 1050 (1997). After a review of the complete record, I conclude that there is evidence to support the trial court's determination of the chronology of the events.

[5] Under *Terry* v. *Ohio*, supra, 392 U.S. 21, the United States Supreme Court held that the police may detain an individual for investigative purposes if there is a reasonable and articulable suspicion that the individual is engaged or about to engage in criminal activity. The *Terry* court further held that "the police officer must be able to point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant that intrusion." Id.

In this case, the trial court found and Keeney admitted that he did not have probable cause or reasonable suspicion to detain the defendant further. Keeney testified that he "didn't have probable cause, but it was a chance" and that he had a "hunch" that something was wrong. He further testified that "because [he] had backup, [he] knew it would be safe, and [he] said that this would be a good opportunity to take a chance . . . [t]o see if he'd let me search the vehicle to see if he had any contraband or anything in the vehicle." This court has consistently held that "[t]he police officer's decision to do so must be based on more than hunch or speculation." *State* v. *Cofield*, 220 Conn. 38, 45, 595 A.2d 1349 (1991); see also *State* v. *DaEria*, 51 Conn. App. 149, 155, 721 A.2d 539 (1998); *State* v. *Maia*, 45 Conn. App. 679, 683, 697 A.2d 707, cert. denied, 243 Conn. 941, 704 A.2d 797 (1997).

tion of the defendant to be lawful, the detention must have been consensual.[6]

Under the fourth amendment to the United States constitution, the test in distinguishing a seizure from a consensual encounter is whether "in view of all of the circumstances surrounding the incident, a reasonable person would have believed that he was not free to leave"; *United States* v. *Mendenhall*, 446 U.S. 544, 554, 100 S. Ct. 1870, 64 L. Ed. 2d 497 (1980); or "feel free to decline the officers' requests or otherwise terminate the encounter." *Florida* v. *Bostick*, 501 U.S. 429, 436, 111 S. Ct. 2832, 115 L. Ed. 2d 389 (1991). A seizure occurs only if there is a show of "physical force . . . or . . . submission to the assertion of authority." *California* v. *Hodari D.*, 499 U.S. 621, 626, 111 S. Ct. 1547, 113 L. Ed. 2d 690 (1991).

The following facts support the finding that the defendant was unlawfully seized. After Keeney returned the defendant's identification and issued him a traffic citation, Keeney, with the backup of Drummond, asked the defendant to step out of the vehicle. In addition to requesting verbally that the defendant step out of the vehicle, Keeney leaned on the glass of the open window and signaled with his hands for the defendant to step out of the car. It was late at night and both troopers were carrying weapons. The defendant testified that he did not believe that he had any choice but to step out of the vehicle.[7] Keeney then asked the defendant if he

---

[6] I note that officers "do not violate the Fourth Amendment by merely approaching an individual on the street or in another public place, by asking him if he is willing to answer some questions [or] by putting questions to him if the person is willing to listen . . . ." *Florida* v. *Royer*, supra, 460 U.S. 497.

[7] The defendant further testified that "[h]e asked me to step out [of] the car so, obviously, I had no standing and the guy had a gun, a badge, it was late at night, I'm black, the guy in the car with me, he's black. We both weigh over three or four hundred pounds. He's intimidated by us and, quite naturally, we're intimidated by him."

had contraband in the vehicle. The defendant answered, "No." Keeney persisted and asked if he could search the vehicle. The defendant consented. I conclude, on the basis of the facts in this case, that a reasonable person would not feel free to decline the trooper's requests or otherwise terminate the encounter and that the defendant submitted to Keeney's assertion of authority.

Because I conclude that the defendant was unlawfully seized in violation of the fourth amendment to the United States constitution, the next issue is whether the consent to search was obtained as a result of the unlawful seizure. "It is well settled that [i]f the police obtain physical evidence . . . as the result of the seizure of a person . . . in violation of the . . . [fourth amendment to the United States constitution] the fruit of the poisonous tree doctrine requires that the evidence be suppressed as the product of the unlawful seizure." (Internal quotation marks omitted.) *State* v. *James*, supra, 237 Conn. 404. "Evidence is not to be excluded, however, if the connection between the illegal police conduct and the discovery and seizure of the evidence is so attenuated as to dissipate the taint." (Internal quotation marks omitted.) *State* v. *Colvin*, 241 Conn. 650, 662, 697 A.2d 1122 (1997) (*Katz, J.*, dissenting). "When evidence is obtained as a direct result of an unconstitutional search or seizure, it is subject to exclusion if it is tainted by the prior illegality, which determination depends on whether the challenged evidence was come at by exploitation of [the initial] illegality or instead by means *sufficiently distinguishable* to be purged of the primary taint. . . . *Wong Sun* v. *United States*, 371 U.S. 471, 488, 83 S. Ct. 407, 9 L. Ed. 2d 441 (1963)." (Emphasis in original; internal quotation marks omitted.) *State* v. *Colvin*, supra, 662 (*Katz, J.*, dissenting).

In this case, the defendant was unlawfully detained when he was asked to step out of the car. He was questioned about whether there was contraband in the car and, after he stated, "No," he was asked if his car could be searched. The defendant consented and contraband was found in the car. Keeney testified that he had nothing more than a hunch that something was wrong and wanted to take a chance and search the car. While the contraband was found after consent was given by the defendant, I would conclude that the seizure of the physical evidence was not so attenuated from the unlawful seizure of the defendant to dissipate the taint. It is well settled law "that a consent obtained during an illegal detention is ordinarily ineffective to justify an otherwise invalid search." *Ohio* v. *Robinette*, 519 U.S. 33, 51, 117 S. Ct. 417, 136 L. Ed. 2d 347 (1996) (Stevens, J., dissenting), citing *Florida* v. *Royer*, supra, 460 U.S. 491 (plurality opinion).

I conclude that the defendant was unlawfully seized and, because the defendant's consent to search was the result of that unlawful seizure, the consent was not effective to justify the search of the vehicle. See *Ohio* v. *Robinette*, supra, 519 U.S. 51. Accordingly, I would reverse the decision of the trial court denying the defendant's motion to suppress the evidence.