STATE OF CONNECTICUT *v.* ANTOINE WRAGG
(AC 20000)

Foti, Schaller and O'Connell, Js.

Argued October 24, 2000—officially released January 16, 2001

*Joaquina Borges King*, special public defender, for the appellant (defendant).

*Robin S. Schwartz*, special deputy assistant state's attorney, with whom, on the brief, were *Jonathan C.*

*Benedict,* state's attorney, and *Nicholas J. Bove, Jr.,* senior assistant state's attorney, for the appellee (state).

*Opinion*

O'CONNELL, J. The defendant appeals from the judgment of conviction, rendered after a jury trial, of burglary in the second degree in violation of General Statutes § 53a-102 (a), conspiracy to commit burglary in the second degree in violation of General Statutes §§ 53a-48 (a) and 53a-102 (a), conspiracy to commit larceny in the second degree in violation of General Statutes §§ 53a-48 (a), 53a-123 (a) (2) and 53a-119, and larceny in the second degree in violation of General Statutes §§ 53a-123 (a) (2) and 53a-119. He claims that the trial court improperly (1) denied his motion for a mistrial and (2) denied his motion to suppress evidence.[1] We affirm the judgment of the trial court.

The jury reasonably could have found the following facts. At approximately 7 o'clock on the morning of September 6, 1998, Officer Chris Rubis of the Fairfield police department observed a vehicle in which the operator was not wearing a seat belt in violation of General Statutes § 14-100a (c) (1).[2] Rubis followed the car and radioed for information on the car's license plate number. In response, he learned that the license plate had not been issued for the vehicle that he was following.

---

[1] The defendant's statement of issues also claimed that the court improperly failed to suppress statements of the defendant derived from the allegedly illegal search. The defendant merely mentions this issue without analysis. A reviewing court will not consider an inadequately briefed issue. See *Middletown Commercial Associates Ltd. Partnership* v. *Middletown,* 42 Conn. App. 426, 439 n.12, 680 A.2d 1350, cert. denied, 239 Conn. 939, 684 A.2d 711 (1996). An issue merely mentioned will be deemed abandoned. *Fromer* v. *Freedom of Information Commission,* 36 Conn. App. 155, 156, 649 A.2d 540 (1994).

[2] General Statutes § 14-100a (c) (1) provides in relevant part: "The operator of . . . a private passenger motor vehicle . . . equipped with seat safety belts . . . shall wear such seat safety belt while the vehicle is being operated on the highways of this state . . . ."

When the driver stopped to get gas, Rubis pulled in behind him and approached the driver, who was identified as the defendant. Although he could not produce any identification for himself or registration documents for the vehicle, he gave Rubis his correct name and date of birth. The defendant and his passenger both told Rubis that they were en route to Stamford despite the fact that they were headed in the opposite direction. During the ensuing conversation, the defendant volunteered the information that he had been released from jail within the past year.

As Rubis was speaking with the defendant and his passenger, Sergeant Tom Mrozek arrived in response to Rubis' call for backup. Mrozek assisted Rubis by performing criminal history checks which revealed that both the defendant and his passenger had records for burglary and larceny.

During his conversation with the defendant, Rubis observed electronic equipment and a large number of compact discs in plain view on the backseat. The defendant told Rubis that they were his and consented to Rubis' looking through them. Rubis then asked the defendant if he could take them for safekeeping until the defendant could produce documentation showing his ownership. The defendant agreed.[3] At that point, Rubis had no knowledge of a burglary or similar crime having taken place. Rubis determined that the car

---

[3] At the hearing on the defendant's motion to suppress the seized evidence, Rubis testified as follows under cross-examination by defense counsel:

"Q. And you told him you were going to take these items in for safekeeping, is that correct?

"A. I asked him if I could and I asked him if he would be able to produce receipts, and he said he would, it's okay. I don't know the exact wording, but in a sense he said yes.

"Q. Well, in a sense?

"A. Yes.

"Q. It's important—

"A. It's okay. He said that it's not a problem."

belonged to the defendant's uncle and that the defendant had permission to use it. The defendant then produced the correct license plates and paperwork from the trunk of his car, and Rubis helped put the license plates on the vehicle. Rubis allowed the defendant to leave after issuing him a citation for operating a motor vehicle without a license and misuse of license plates.

The items in question were subsequently identified as having been stolen in a burglary in Fairfield. About three weeks later, as a result of further police investigation, the defendant was arrested on the charges that gave rise to this appeal. At trial, the court, after a hearing, denied his motion to suppress evidence of the items seized from the backseat of his car.

## I

The defendant first argues that the court improperly denied his motion for a mistrial on the ground that Rubis improperly testified as to the defendant's prior criminal record. We do not agree.

The following additional facts are necessary for a resolution of this claim. During trial, Rubis testified on cross-examination as follows:

"Q. . . . What drew your attention to the knapsack or the items on the backseat?

"A. I had no identification on who the operator was and I had no information on what type of vehicle [it] was at that point in time. The assisting officer, Sgt. Mrozek, called into headquarters to assist in identifying who [the defendant] was and ran his name and date of birth through the state of Connecticut criminal history check. In that criminal history check, it was determined that he's been—he has past convictions for burglaries as well as larcenies, et cetera. And also in interviewing [the defendant] on scene, he told me he had just gotten

out of jail within a year prior to that. I'm not sure of the exact amount of time that we had determined."

The defendant did not move to strike the testimony or request that the court give the jury a curative instruction. Instead, defense counsel completed her cross-examination, and the trial continued with five more witnesses before the state rested.

The following morning, before closing arguments, the defendant moved for a mistrial on the grounds that the court had failed to strike Rubis' testimony sua sponte and to instruct the jury sua sponte to disregard it.

"[E]vidence that a criminal defendant has been convicted of crimes on prior occasions is generally not admissible." *State* v. *McClain,* 23 Conn. App. 83, 85, 579 A.2d 564, cert. denied, 216 Conn. 822, 581 A.2d 1056 (1990). This rule, is not, however, without exception. The facts of this case present one such exception. A party may not complain when evidence he invites comes into a case. *State* v. *Smith,* 212 Conn. 593, 611, 563 A.2d 671 (1989); *State* v. *Brokaw,* 183 Conn. 29, 33, 438 A.2d 815 (1981). In the present case, defense counsel's cross-examination invited Rubis' reference to the defendant's criminal record. Defense counsel knew, from the suppression hearing, that Rubis was suspicious of the items in the backseat, yet counsel made no effort to interrupt Rubis' testimony, nor did she move to strike it or seek a curative instruction.

The defendant, nevertheless, argues that the court had a duty to strike the testimony sua sponte and to give a curative instruction. He bases his sua sponte argument on *State* v. *Traficonda,* 223 Conn. 273, 282–83, 612 A.2d 45 (1992). This reliance is misplaced. The trial court in *Traficonda* was not acting sua sponte. Rather, after a witness uttered improper testimony, "[d]efense counsel immediately objected, moved to strike and moved for a mistrial." Id., 281. The court struck the

witness' testimony, gave a cautionary instruction to the jury, but denied the motion for a mistrial. Id.

*Traficonda* is inapposite not only because in that case the court was acting in response to defense counsel's motion, but also because the court denied the motion for a mistrial. By contrast, in the present case, the only issue raised concerns the court's failure to grant a mistrial. Because a mistrial was denied in *Traficonda*, we are hard pressed to rely on that case as authority for the defendant's claim that a mistrial should have been granted here sua sponte.

Furthermore, when opposing counsel does not object to evidence, it is inappropriate for the trial court to assume the role of advocate and decide that the evidence should be stricken. *State* v. *Delarosa*, 16 Conn. App. 18, 27, 547 A.2d 47 (1988). The court cannot determine if counsel has elected not to object to the evidence for strategy reasons. *State* v. *Hickey*, 23 Conn. App. 712, 717–18, 584 A.2d 473, cert. denied, 217 Conn. 809, 585 A.2d 1233, cert. denied, 501 U.S. 1252, 111 S. Ct. 2894, 115 L. Ed. 2d 1058 (1991). Experienced litigators utilize the trial technique of not objecting to inadmissible evidence to avoid highlighting it in the minds of the jury. Such court involvement might interfere with defense counsel's tactical decision to avoid highlighting the testimony. "When subsequent events reveal that it was an imprudent choice, however, the defendant is not entitled to turn the clock back and have [the appellate court] reverse the judgment because the trial court did not, sua sponte, strike the testimony and give the jury a cautionary instruction. No limiting instruction was given at the time [of the offending] remark and none was required because none was requested." Id.

The defendant appears to believe that a mistrial and a curative instruction are interchangeable, and that he has a right to choose which one he will utilize. He is

mistaken. Each is a separate procedural device designed to serve a discrete function.

We affirm the denial of the defendant's motion for a mistrial.

## II

The defendant next claims that the seizure of the evidence from the backseat of his car was an unreasonable warrantless search in violation of the fourth amendment to the United States constitution and the constitution of Connecticut, article first, §§ 7 and 9.[4]

We first note what we are not deciding in this appeal. Although urged to do so by the parties, we are not determining whether the police had a reasonable and articulable suspicion of criminal conduct to justify what is well known as a *"Terry* stop." *Terry* v. *Ohio*, 392 U.S. 1, 21, 88 S. Ct. 1868, 20 L. Ed. 2d 889 (1968). It is established law that law enforcement officers do not violate the fourth amendment by merely approaching an individual on the street and asking him questions if he is willing to answer. *Florida* v. *Royer*, 460 U.S. 491, 497, 103 S. Ct. 1319, 75 L. Ed. 2d 229 (1983); *State* v. *Story*, 53 Conn. App. 733, 745 n.6, 732 A.2d 785 (*Hennessy, J.*, dissenting), cert. denied, 251 Conn. 901, 738 A.2d 1093 (1999). Our Supreme Court has recognized that "[e]ffective crime prevention and detection underlie the recognition that a police officer may, in appropriate circumstances and in an appropriate manner, approach a person for purposes of investigating possible criminal behavior even though there is no probable cause to make an arrest." (Internal quotation marks

---

[4] In his brief, the defendant invoked both the United States constitution and the constitution of Connecticut. Because he has not provided a separate and distinct analysis of his claim under the state constitution, we address only his federal constitutional claim. See *State* v. *Joyce*, 243 Conn. 282, 288 n.6, 705 A.2d 181 (1997), cert. denied, 523 U.S. 1077, 118 S. Ct. 1523, 140 L. Ed. 2d 674 (1998).

omitted.) *State* v. *Perez*, 181 Conn. 299, 305, 435 A.2d 334 (1980). The present case clearly fits within the principles of *Royer* and *Perez*. The defendant had stopped his automobile in a gas station when Rubis approached and questioned him. There is no suggestion that the defendant was even slightly reluctant to answer the questions. He was not in custody and was free to leave at any time.

The officer knew that he did not have probable cause to arrest the defendant or to search the vehicle without his consent.[5] "A warrantless search . . . is not unreasonable, however, under the fourth amendment to the United States constitution . . . when a person with authority to do so has freely consented." *State* v. *Martinez*, 49 Conn. App. 738, 743, 718 A.2d 22, cert. denied, 247 Conn. 934, 719 A.2d 1175 (1998). "It is . . . well settled that one of the specifically established exceptions to the requirements of both a warrant and probable cause is a search [or seizure] that is conducted pursuant to consent." *Schneckloth* v. *Bustamonte*, 412 U.S. 218, 219, 93 S. Ct. 2041, 36 L. Ed. 2d 854 (1973); see also *State* v. *Reddick*, 189 Conn. 461, 467, 456 A.2d 1191 (1983). Whether a defendant has voluntarily consented to a search is a question of fact to be determined from the totality of the circumstances. The trial court makes this determination on the basis of the evidence that it deems credible along with the reasonable inferences that can be drawn therefrom. *State* v. *Ortiz*, 17 Conn. App. 102, 103–104, 550 A.2d 22, cert. denied, 209 Conn. 828, 552 A.2d 1216 (1988).

"Our standard of review of a trial court's findings and conclusions in connection with a motion to suppress is

---

[5] The officer was originally attracted to the vehicle because the defendant was not wearing a seat belt. General Statutes § 54-33m expressly provides that failure of an operator to wear a seat belt "shall not constitute probable cause for a law enforcement official to conduct a search of such vehicle and its contents."

well defined. A finding of fact will not be disturbed unless it is clearly erroneous in view of the evidence and pleadings in the whole record . . . . [W]here the legal conclusions of the court are challenged, we must determine whether they are legally and logically correct and whether they find support in the facts set out in the memorandum of decision . . . ." (Internal quotation marks omitted.) *State* v. *Story*, supra, 53 Conn. App. 739.

"Whether there was valid consent to a search is a factual question that will not be lightly overturned on appeal." *State* v. *Zarick*, 227 Conn. 207, 226, 630 A.2d 565, cert. denied, 510 U.S. 1025, 114 S. Ct. 637, 126 L. Ed. 2d 595 (1993). Examination of the record in the present case leads us to the inescapable conclusion that the defendant's will was not overborne and that his consent was his unconstrained choice.

The trial court's denial of the motion to suppress was legally and logically correct, and was properly supported by the facts.

The judgment is affirmed.

In this opinion the other judges concurred.