STATE OF CONNECTICUT *v.* ALEXANDER
AMANYO NIEVES
(AC 20573)

Lavery, C. J., and Foti and Daly, Js.

Argued May 30—officially released August 21, 2001

*Frank P. Cannatelli,* for the appellant (defendant).

*James M. Ralls,* assistant state's attorney, with whom, on the brief, were *Matthew C. Gedansky,* assistant state's attorney, and *Patricia A. Swords,* former state's attorney, for the appellee (state).

*Opinion*

LAVERY, C. J. The defendant, Alexander Amanyo Nieves, appeals from the judgments of conviction, rendered after his conditional pleas of nolo contendere, of five counts of burglary in the third degree in violation of General Statutes § 53a-103.[1] On appeal, the defendant claims that the court improperly denied his motions to suppress items seized from a vehicle and one paragraph of a three page statement that he gave to the state police. We affirm the judgments of the trial court.

The following facts and procedural history are relevant to this appeal. At approximately 3:30 a.m. on June 8, 1997, Trooper Robert Lombardo of the state police was dispatched to a house in Stafford on a report that the defendant had threatened to shoot his girlfriend and himself. When Lombardo arrived, a witness told him that the defendant had fled into a nearby wooded area. Additional troopers were called, the perimeter of

---

[1] General Statutes § 53a-103 provides: "(a) A person is guilty of burglary in the third degree when he enters or remains unlawfully in a building with intent to commit a crime therein.

"(b) Burglary in the third degree is a Class D felony."

the area was secured and a K-9 unit was deployed. The search ended unsuccessfully at approximately 6:30 a.m.

At that time, Lombardo was assigned to take witness statements and to determine the identity of the owner of the vehicle that the defendant had left at the house. While looking in the passenger side window to obtain the vehicle identification number and registration, he saw several car radios and compact disc players on the backseat and floor. The items had wires hanging out of them, consistent with their having been removed from motor vehicles. Lombardo also saw that one of the radios had the same brand name as one that he had learned before his work shift began the previous evening had been reported stolen. Believing the items in the vehicle to be stolen, Lombardo seized them from the unlocked car.

At approximately the same time as the search ended, Trooper James Reidy of the state police was directed to the Stafford location and advised of the situation. When Reidy arrived, a male came out of the house and pointed toward a wooded area. Reidy looked in that direction and saw someone running around a parked camping trailer. Reidy and Trooper Michael Foley of the state police entered the trailer with a key obtained from the owner and found the defendant under a bed. The defendant was arrested. No weapon was found.

Shortly after the arrest, the defendant was read his *Miranda*[2] rights, which he appeared to understand. At the state police barracks, Reidy again advised the defendant of his rights and reviewed the waiver of rights form, which the defendant read aloud and initialed in the appropriate places. The defendant then read the warning at the top of the statement form and gave an oral statement to Reidy, who transcribed it. The defendant read the statement, including admissions

---

[2] *Miranda* v. *Arizona*, 384 U.S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966).

regarding the theft of the items in the car, and signed the bottom of each of the three pages.

At a pretrial suppression hearing, the defendant claimed that Lombardo illegally had seized the electronic equipment because it had been in the trunk of the car, not in the passenger compartment as Lombardo testified. The defendant also claimed that although he "voluntarily" had signed all three pages of his statement, the paragraph with information regarding the theft of the radios[3] was added after he signed it. The court credited the troopers' contrary testimony on both claims and denied the motions to suppress on October 29, 1999. The defendant pleaded nolo contendere to all counts on November 30, 1999, conditioned on the right to appeal from the denial of his motions. He received a total effective sentence of seven and one-half years incarceration. Additional facts will be provided as necessary.

I

The defendant first claims that the court improperly found that the seizure of the electronic equipment did not violate his rights under the fourth amendment to the United States constitution.[4] The defendant does not

[3] That paragraph reads as follows: "I earlier called my girl from Roaring Brook Campground and told her that I had a gun and was thinking about committing suicide if she didn't talk to me in person. I also freely admit that I stole [unreadable] Alpine radio and 3 CB radios out of 4 or 5 trucks that were parked at a garage on Rt. 190 between the Boro and Roaring Brook Campground. I can't remember if I took the radios before or after I went to Roaring Brook Campground."

[4] The fourth amendment to the United States constitution provides: "The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no warrants shall issue, but upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized."

In his statement of the issues, the defendant claims that the court improperly concluded that the searches also did not violate the fifth amendment to the United States constitution or the constitution of Connecticut, article first, §§ 7 and 8. He briefed only the fourth amendment claim. Issues not

challenge the court's ruling that pursuant to the automobile exception to the fourth amendment's warrant requirement, the officers had the right to search the automobile.[5] He instead attacks the court's factual finding that the electronic equipment was in plain view, arguing that it was actually in the trunk. We disagree that the finding was clearly erroneous.

"On appeal, we apply a familiar standard of review to a trial court's findings and conclusions in connection with a motion to suppress. A finding of fact will not be disturbed unless it is clearly erroneous in view of the evidence and pleadings in the whole record . . . . The conclusions drawn by the trial court will be upheld unless they are legally and logically inconsistent with the evidence. . . . [W]e engage in a careful examination of the record to ensure that the court's decision was supported by substantial evidence." (Internal quotation marks omitted.) *State* v. *Fletcher*, 63 Conn. App. 476, 479, 777 A.2d 691, cert. denied, 257 Conn. 902, 776 A.2d 1152 (2001), quoting *State* v. *Trine*, 236 Conn. 216, 225, 673 A.2d 1098 (1996); Practice Book § 60-5. We give great deference to the findings of the trial court because it weighs the evidence before it and assesses the credibility of witnesses. See *State* v. *Clark*, 255 Conn. 268, 280, 764 A.2d 1251 (2001).

As we noted in *State* v. *Sailor*, 33 Conn. App. 409, 635 A.2d 1237, cert. denied, 229 Conn. 911, 642 A.2d 1208 (1994), "[t]he plain view doctrine is based upon the premise that the police need not ignore incriminating evidence in plain view while . . . entitled to be in a

briefed are deemed waived. *Czarnecki* v. *Plastics Liquidating Co.*, 179 Conn. 261, 262 n.1, 425 A.2d 1289 (1979). This court also declines to review inadequately briefed issues. *State* v. *Wragg*, 61 Conn. App. 394, 395 n.1, 764 A.2d 216 (2001).

[5] The defendant concedes that the police had justification to search the automobile under any of three exceptions to the warrant requirement: Plain view, exigent circumstances or an inventory search.

position to view the items seized." (Internal quotation marks omitted.) Id., 414. Our Supreme Court recently stated in *State* v. *Eady*, 249 Conn. 431, 733 A.2d 112, cert. denied, 528 U.S. 1030, 120 S. Ct. 551, 145 L. Ed. 2d 428 (1999), that warrantless seizures of contraband in plain view are reasonable under the fourth amendment if "(1) the initial intrusion that enabled the police to view the items seized [was] lawful; and (2) the police . . . had probable cause to believe that these items were contraband or stolen goods."[6] (Internal quotation marks omitted.) Id., 437.

In addition to calling attention to his own testimony regarding the equipment's placement, the defendant makes much of the fact that other state troopers went through the vehicle prior to Lombardo. He notes that Nilda Markowitz, his girlfriend, testified that she saw state troopers conducting an initial search of the entire car, including the trunk, at approximately 4 a.m. Lombardo also testified that the vehicle had been secured by other officers before he looked into the passenger window for the vehicle identification number.

The defendant hypothesizes that if the electronic equipment were in the car at the time it was secured, state troopers would have seized or inventoried it at that time. Because they did not, he argues, it could not have been in the passenger compartment.[7]

The defendant's argument is untenable. His own witness testified that the troopers originally looked

[6] A possible third scenario under *Coolidge* v. *New Hampshire*, 403 U.S. 443, 466, 91 S. Ct. 2022, 29 L. Ed. 2d 564 (1971), for a reasonable, warrantless seizure, i.e., that the discovery be inadvertent, does not apply if the items seized are contraband, stolen property or objects dangerous in themselves. *State* v. *Eady*, supra, 249 Conn. 437 n.7, citing *State* v. *Couture*, 194 Conn. 530, 547, 482 A.2d 300 (1984), cert. denied, 469 U.S. 1192, 105 S. Ct. 967, 83 L. Ed. 2d 971 (1985).

[7] The defendant also hypothesizes that "the officers who secured the vehicle and did not testify probably already did a [vehicle identification number] check . . . ."

through both the passenger compartment and the trunk. Following the defendant's reasoning, the equipment could not have been in either location because the police would have immediately seized or inventoried it. That logic runs counter to the defendant's admission that the equipment was in the trunk.

This is primarily a question of credibility. The court credited Lombardo, who testified that nothing was found in or seized from the trunk. It further reasoned that it was logical to infer that the state troopers in the earlier search were eliminating the possibility that the defendant was hiding in the car rather than looking for stolen items. The court's finding is not clearly erroneous.

## II

The defendant next claims that the court improperly found that his statement was voluntary and did not violate the fifth amendment to the United States constitution.[8] We disagree.

The test for voluntariness is whether an examination of all the circumstances shows that law enforcement officials "overbear [the defendant's] will to resist and bring about confessions not freely self-determined . . . . The ultimate test remains . . . . Is the confession the product of an essentially free and unconstrained choice by its maker? . . . [I]f his will has been overborne and his capacity for self-determination criti-

---

[8] The fifth amendment to the United States constitution provides in relevant part: "No person . . . shall be compelled in any criminal case to be a witness against himself . . . ."

As with his seizure argument, the defendant in his statement of the issues claims that the court improperly refused to hold that the confession also violated the fourth amendment to the United States constitution, as well as the constitution of Connecticut, article first, §§ 7 and 8. He briefs only the fifth amendment claim. For the reasons previously stated; see footnote 4; we decline to review those inadequately briefed issues. See State v. Wragg, supra, 61 Conn. App. 395 n.1.

cally impaired, the use of his confession offends due process." (Internal quotation marks omitted.) *State* v. *Hafford*, 252 Conn. 274, 299, 746 A.2d 150, cert. denied, 531 U.S. 855, 121 S. Ct. 136, 148 L. Ed. 2d 89 (2000), citing *Schneckloth* v. *Bustamonte*, 412 U.S. 218, 225, 93 S. Ct. 2041, 36 L. Ed. 2d 854 (1973). The voluntariness of a confession is viewed independently on the basis of a "scrupulous examination of the record." (Internal quotation marks omitted.) *State* v. *Hafford*, supra, 299, citing *State* v. *Pinder*, 250 Conn. 385, 420, 736 A.2d 857 (1999).

The defendant challenges the court's factual finding that the paragraph that starts on the bottom of the second page of his written statement and continues on the top of the third page was a part of his original statement and was not added later, as he claimed. The defendant argues that even if he did agree that the first four lines of the third page of the confession were there properly, there is no reason for the state trooper to have written, "What I have said is the truth," two thirds of the way down the page without placing a line through the intervening blank section to foreclose the possibility that information could be added after the defendant signed the page. The defendant conjectures that the "only reason a lay person would find [for the trooper to leave the space blank] is to add something at a later time." Because Reidy did not testify as to why he left blank lines and because, as the defendant claims, he "should have known better," the defendant argues that he should be given "the benefit of the doubt" in Reidy's testimony as to that issue. He suggests that we remand this case for a determination of this issue or whether the confession was voluntary under the totality of the circumstances.[9]

---

[9] In his brief, the defendant restated several allegations that officers physically abused him immediately following his arrest and that he was in an alcohol and drug induced blackout on the early morning of June 8, 1997. The court instead credited the state troopers' testimony that they neither smelled alcohol on the defendant's breach nor believed him to be under its

The state counters that the court's finding that Reidy did not fabricate any part of the defendant's statement was not clearly erroneous. The state first relies on Reidy's direct testimony regarding the mechanics of the taking of the statement, and the defendant's review and signature of it. Second, on cross-examination, Reidy testified that although the disputed paragraph was not in chronological order, people remember events at different times, and the statement accurately represents what the defendant told him. As this issue involves a matter of credibility, the state correctly argues that the court was free to accept Reidy's testimony and reject the defendant's testimony in its entirety.

The state notes that the defendant did not cross-examine Reidy regarding the blank lines. It further argues that there is no legal support for either the defendant's claim that the court must make a determination as to that issue before ruling on credibility or his claim that police should place a line through the blank portions.

The court properly credited the state troopers' testimony. It credited Reidy's testimony that he transcribed the entire statement exactly as the defendant told it to him and found that it contained the defendant's allegation that he was beaten by state troopers in the trailer. The court also credited Reidy's testimony that the defendant understood English and came to the same conclusion at the hearing. The defendant admitted at the hearing that he is familiar with postarrest police procedures as a result of his eighteen previous arrests, and had alternatively given statements to police and refused to do so in the past. In this instance, the defendant testified that he "voluntarily" gave a written statement to Reidy when requested to do so, but that he

---

influence. The defendant does not explicitly raise those incidents as factors that would have contributed to the involuntary nature of his confession.

thought that he would be beaten again if he did not. He testified that no one threatened him with violence or any harm if he did not give a statement.

We conclude that it was not clearly erroneous for the court not to credit the defendant's testimony that he voluntarily signed a nearly blank third page of his statement to police.

The judgments are affirmed.

In this opinion the other judges concurred.