## STATE OF CONNECTICUT *v.* JULIO T. BURGOS-TORRES
### (AC 29896)

Flynn, C. J., and Bishop and Pellegrino, Js.

Argued February 4—officially released April 28, 2009

*Deborah G. Stevenson*, special public defender, for the appellant (defendant).

*John A. East III*, senior assistant state's attorney, with whom, on the brief, were *John A. Connelly*, state's attorney, and *Patrick J. Griffin*, senior assistant state's attorney, for the appellee (state).

FLYNN, C. J. The defendant, Julio T. Burgos-Torres, appeals from the judgment of conviction, rendered after a jury trial, on the charges of murder in violation of General Statutes § 53a-54a (a) and criminal possession of a firearm in violation of General Statutes § 53a-217 (a) (1). On appeal, the defendant claims that the trial court abused its discretion (1) in admitting the testimony of Michael A. Munoz, one of the state's witnesses, because the state called him to the witness stand for the primary purposes of impeaching his earlier testimony and bolstering his credibility and in allowing Munoz to testify regarding his inconsistent September 12, 2005 testimony at the defendant's probable cause hearing and (2) by denying the jury's request to review inconsistent statements after instructing the jury on the law regarding inconsistent statements. The defendant also challenges his conviction on the ground that the prosecutor engaged in impropriety throughout the trial. We reject all of the defendant's claims and affirm the trial court's judgment of conviction.

The following facts, as reasonably could have been found by the jury, provide the necessary background for the disposition of the defendant's appeal. The defendant was upset that the victim, Jesus Gonzalez, had been selling drugs in the defendant's territory. A person whom the defendant used as a runner for his drugs spoke with the victim, and the victim asked the runner to relay a vulgar insult to the defendant. Angry over the insulting message from the victim, the defendant demanded an apology, and he enlisted the assistance of Luis Gonzalez to contact the victim. After the victim apologized to the defendant via the telephone, the defendant demanded a face-to-face apology. Luis Gonzalez, while in the company of Munoz, picked up the victim, who was waiting outside the rear of Dorado's Cafe in Waterbury, and drove him to Munoz' home,

which was nearby on Granite Street. After arriving at Munoz' home, the victim telephoned the defendant to tell him that he was at Munoz' home if he wanted a face-to-face apology. The victim, Munoz and Luis Gonzalez waited outside for the defendant to arrive. Munoz' wife and children were in the backyard. The victim and the defendant exchanged words, and the victim, again, apologized to the defendant. The defendant told the victim that the victim had been selling drugs in the defendant's territory, and the victim offered another apology. The exchange between the defendant and the victim became more heated and some obscenities were exchanged. The victim told the defendant that he had apologized and that there was nothing else he could do. The defendant then pulled a gun from his waistband, pointed it at the victim's chest and repeatedly shot him, before turning and running away. Munoz' wife telephoned 911, and Munoz stayed with the victim until the police arrived. Both Luis Gonzalez and Munoz positively identified the defendant as the murderer.

The defendant was arrested and charged with criminal possession of a firearm and murder. After a trial, the jury found that on July 18, 2005, the defendant criminally possessed a firearm and, with the intent to cause the death of another person, murdered the victim. After accepting the jury's verdict, the court sentenced the defendant to sixty years imprisonment on the murder conviction and five years, consecutive, for the criminal possession of a firearm conviction for a total effective sentence of sixty-five years incarceration. This appeal followed.

I

The defendant first claims that the court improperly admitted the testimony of Munoz after the state called him for the primary purposes of impeaching his earlier testimony and bolstering his credibility. He also claims

that the court improperly allowed Munoz to testify regarding his inconsistent September 12, 2005 testimony at the defendant's probable cause hearing.[1] The defendant argues that the court, sua sponte, should have prohibited this testimony, and he requests review of this unpreserved claim under *State* v. *Golding*, 213 Conn. 233, 239–40, 567 A.2d 823 (1989), or the plain error doctrine. See Practice Book § 60-5. The defendant cannot prevail under either doctrine.

"Under *Golding*, a defendant can prevail on a claim of constitutional error not preserved at trial only if all of the following conditions are met: (1) the record is adequate to review the alleged claim of error; (2) the claim is of constitutional magnitude alleging the violation of a fundamental right; (3) the alleged constitutional violation clearly exists and clearly deprived the defendant of a fair trial; and (4) if subject to harmless error analysis, the state has failed to demonstrate harmlessness of the alleged constitutional violation beyond a reasonable doubt." (Internal quotation marks omitted.) *State* v. *King*, 289 Conn. 496, 502–503, 958 A.2d 731 (2008). We conclude that the defendant has failed to demonstrate that this claim is of constitutional magnitude.

In the defendant's brief, he argues that this claim is reviewable because it "affects the defendant's right to due process and a fair trial pursuant to the sixth amendment to the United States constitution and article first, § 8, of the Connecticut constitution." Although the brief

---

[1] We also note that insofar as the defendant raises an issue concerning the admissibility of Munoz' trial testimony explaining his inconsistent September 12, 2005 testimony at the defendant's probable cause hearing, the defendant informed the court that he wanted the court to give a limiting instruction to the jury. To clarify an uncertainty, the court specifically asked defense counsel whether he was indicating that he had no objection to the testimony. Defense counsel responded: "That's correct, Your Honor. As long as there is a cautionary instruction." The court gave a cautionary instruction as requested by the defendant.

contains this one passing sentence on the alleged relevant sections of the constitutions, the defendant's brief is devoid of any analysis related thereto. He fails to explain how this claim is of constitutional magnitude or how the facts of this case relate to the constitutional text or the Supreme Court's interpretation of such text. Such a presentation on the admissibility of evidence does not permit the conclusion that the defendant's constitutional rights, under the sixth amendment to the United States constitution or article first, § 8, of the Connecticut constitution are implicated. The defendant bears the responsibility of demonstrating that his claim alleges the violation of a fundamental constitutional right. *State* v. *Golding*, supra, 213 Conn. 240. "The defendant can not raise a constitutional claim by attaching a constitutional label to a purely evidentiary claim or by asserting merely that a strained connection exists between the evidentiary claim and a fundamental constitutional right." *State* v. *Stepney*, 94 Conn. App. 72, 79, 891 A.2d 67, cert. denied, 278 Conn. 911, 899 A.2d 40 (2006). Beyond one passing assertion that this claim is of constitutional magnitude, the defendant fails to explain or to analyze how this testimonial evidence implicates his constitutional rights, and, therefore, it fails under the second prong of *Golding* and is not reviewable.

We also decline to afford this claim plain error review. "The plain error doctrine is reserved for truly extraordinary situations where the existence of the error is so obvious that it affects the fairness and integrity of and public confidence in the judicial proceedings. . . . A party cannot prevail under plain error unless it has demonstrated that the failure to grant relief will result in manifest injustice." (Internal quotation marks omitted.) *State* v. *Lawrence*, 282 Conn. 141, 183, 920 A.2d 236 (2007).

Reviewing the record, we perceive no impropriety that would result in manifest injustice. The defendant cites no authority for the proposition that the court, sua sponte, must prohibit testimony of this kind when the opposing party has not objected or when he states on the record that he has no objection to the introduction of the testimony now challenged on appeal. Furthermore, although the defendant argues that the trial court should have assumed the role of gatekeeper and that it sua sponte should have prohibited this testimony, the court's adoption of such a role is not looked on favorably. "[W]hen opposing counsel does not object to evidence, it is inappropriate for the trial court to assume the role of advocate and decide that the evidence should be stricken. . . . The court cannot determine if counsel has elected not to object to the evidence for strategy reasons." (Citation omitted; internal quotation marks omitted.) *State* v. *Wragg*, 61 Conn. App. 394, 399, 764 A.2d 216 (2001).

## II

The defendant next claims: "The trial court abused its discretion when it instructed the jury on inconsistent statements but denied the jury's request to review the inconsistent statements, thereby precluding the jury from reviewing tangible evidence that supported an inference of reasonable doubt." Despite the time honored rule that only full exhibits go to the jury,[2] the defendant argues that "[u]nder the rule of completeness, pursuant to Connecticut Code of Evidence § 1-5,[3]

---

[2] It is axiomatic that a defendant has a "sixth amendment right to have his guilt determined by an impartial jury *on the basis of the evidence presented*" at trial. (Emphasis added; internal quotation marks omitted.) *State* v. *Johnson*, 288 Conn. 236, 257, 951 A.2d 1257 (2008), citing *Holbrook* v. *Flynn*, 475 U.S. 560, 106 S. Ct. 1340, 89 L. Ed. 2d 525 (1986), and *Estelle* v. *Williams*, 425 U.S. 501, 505, 96 S. Ct. 1691, 48 L. Ed. 2d 126 (1976).

[3] Section 1-5 of the Connecticut Code of Evidence provides: "(a) Contemporaneous introduction by proponent. When a statement is introduced by a party, the court may, and upon request shall, require the proponent at that time to introduce any other part of the statement, whether or not

whether or not the statements were otherwise admissible, the court had the discretion to admit them once the jury requested them so that in fairness the jury could consider them in the context of the testimony at trial." The defendant claims that the court abused its discretion when it declined the jury's request to review these statements that were not in evidence. We decline to review this unpreserved claim.

To better understand the defendant's claim, the following background is necessary. During its deliberations, the jury sent a note to the court asking for copies of the statements that Munoz and Luis Gonzalez had given to the police on July 18, 2005. The court declined the jury's request because the statements had not been introduced in evidence at trial but merely had been marked for identification, and the court explained this to the jury. The defendant claims that because the content of these statements repeatedly was brought up during the trial, they were a necessary part of the jury's decision and may have provided a basis for reasonable doubt. Therefore, he argues, the court abused its discretion in denying the jury's request.

The defendant's claim was not preserved at trial for our review, as he offered no objection before the court, and he never asked that the statements be made full exhibits. "Any party intending to raise any question of law which may be subject to an appeal must either state the question distinctly . . . in a written trial brief . . . or state the question distinctly . . . on the record

otherwise admissible, that the court determines, considering the context of the first part of the statement, ought in fairness to be considered contemporaneously with it.

"(b) Introduction by another party. When a statement is introduced by a party, another party may introduce any other part of the statement, whether or not otherwise admissible, that the court determines, considering the context of the first part of the statement, ought in fairness to be considered with it."

. . . . Practice Book § 5-2. We have repeatedly held that this court will not consider claimed errors on the part of the trial court unless it appears on the record that the question was distinctly raised at trial and was ruled upon and decided by the court adversely to the appellant's claim. . . . Our Supreme Court has held that this rule [also] applies to constitutional issues." (Citation omitted; internal quotation marks omitted.) *State* v. *Misenti,* 112 Conn. App. 562, 566, 963 A.2d 696, cert. denied, 291 Conn. 904, 967 A.2d 1220 (2009). In this case, the defendant also has failed to request review of this claim under *State* v. *Golding,* supra, 213 Conn. 239–40, or the plain error doctrine. See Practice Book § 60-5. Accordingly, we decline to review this claim.

### III

The defendant also challenges his conviction on the ground that the prosecutor engaged in impropriety during trial and during closing argument. After setting forth the relevant law, we will consider these claims separately.

"[A] claim of prosecutorial impropriety, even in the absence of an objection, has constitutional implications and requires a due process analysis under *State* v. *Williams,* 204 Conn. 523, 535–40, 529 A.2d 653 (1987). See *State* v. *Stevenson,* 269 Conn. 563, 573–75, 849 A.2d 626 (2004)." *State* v. *Gould,* 290 Conn. 70, 77, 961 A.2d 975 (2009). "In analyzing claims of prosecutorial impropriety, we engage in a two step process. . . . First, we must determine whether any impropriety in fact occurred; second, we must examine whether that impropriety, or the cumulative effect of multiple improprieties, deprived the defendant of his due process right to a fair trial." (Internal quotation marks omitted.) *State* v. *Salamon,* 287 Conn. 509, 551, 949 A.2d 1092 (2008).

### A

The defendant specifically argues: "The prosecutor's improprieties in introducing inadmissible evidence, in

improperly impeaching his own witness with inadmissible evidence, improperly bolstering the witness' testimony, inducing a witness to make a second statement for the purposes of impeachment and bolstering, and offering hearsay character evidence of the defendant for the truth of the matter to show the defendant's propensity for violence, deprived the defendant of his due process right to a fair trial."

We conclude that the defendant is attempting to reassert his unpreserved evidentiary claims through the guise of a claim of prosecutorial impropriety with constitutional implications. See *State* v. *Blango*, 103 Conn. App. 100, 113, 927 A.2d 964, cert. denied, 284 Conn. 919, 933 A.2d 721 (2007); *State* v. *Cromety*, 102 Conn. App. 425, 431, 925 A.2d 1133 ("[a]lthough our Supreme Court has held that unpreserved claims of prosecutorial impropriety are to be reviewed under the *Williams* factors, that rule does not pertain to mere evidentiary claims masquerading as constitutional violations"), cert. denied, 284 Conn. 912, 931 A.2d 932 (2007); see also *State* v. *Rowe*, 279 Conn. 139, 149, 900 A.2d 1276 (2006) (unpreserved and unreviewable evidentiary claim cannot be transformed into one of prosecutorial misconduct). Accordingly, we again decline to review these unpreserved evidentiary claims.

B

The defendant also argues that the prosecutor acted improperly in "emphasizing the defendant's bad character propensity for violence in closing arguments, thereby improperly appealing to the emotions of the jury." The state argues that the prosecutor's comments during closing argument regarding the defendant's reputation for violence were fair comment on the evidence elicited during trial. We agree with the state.

"It is well settled that [a] prosecutor may not appeal to the emotions, passions and prejudices of the jurors.

. . . When the prosecutor appeals to emotions, he invites the jury to decide the case, not according to a rational appraisal of the evidence, but on the basis of powerful and irrelevant factors which are likely to skew that appraisal. . . . Therefore, a prosecutor may argue the state's case forcefully, [but] such argument must be fair and based upon the facts in evidence and the reasonable inferences to be drawn therefrom." (Internal quotation marks omitted.) *State* v. *Tok*, 107 Conn. App. 241, 256, 945 A.2d 558, cert. denied, 287 Conn. 919, 951 A.2d 571 (2008).

The defendant refers to portions of the prosecutor's closing argument in which he sought to highlight the stated reasons for Munoz' inconsistent statements. On the basis of our review of the record, we agree with the state that the prosecutor's argument was firmly rooted in the evidence presented at trial.

During trial, Munoz explained that he had given inconsistent accounts of the murder because he was afraid for his safety and the safety of his family because the defendant had threatened him.[4] This evidence came in by agreement,[5] and the court gave a thorough limiting

---

[4] "The general rule is that threats against witnesses are not relevant and are thus inadmissible as evidence unless the defendant is linked in some way to the making of the threats. . . . The reason for the rule is that evidence of threat against witnesses is generally admissible either on the theory that such conduct is inconsistent with the defendant's claim of innocence or on the theory that the making of such threats evinces a consciousness of guilt. . . . Obviously, if the threats cannot be linked to the defendant, evidence of such threats, directed toward a witness would be of no probative value for those purposes. . . . An exception to the general rule concerning the admissibility of evidence of threats exists, however, where the evidence of threats is offered not to prove the guilt of the accused but rather to explain a witness' prior inconsistent statement." (Citations omitted; internal quotation marks omitted.) *State* v. *Walker*, 214 Conn. 122, 129, 571 A.2d 686 (1990); see also *State* v. *Alvarez*, 216 Conn. 301, 318–19, 579 A.2d 515 (1990).

[5] See footnote 1.

instruction to the jury regarding the use of such evidence. During closing argument, the prosecutor discussed these inconsistencies and highlighted the evidence surrounding the reasons for the inconsistencies. Our own review of the record leads us to the conclusion that this was fair comment on the evidence, in an attempt to explain the inconsistencies in the witness' testimony and not in an attempt to get the jury to use this information substantively against the defendant. Additionally, we note that the court gave a very thorough limiting instruction explaining the purpose of this evidence and, during its final instructions, reminded the jury of the limited purpose of this evidence. Furthermore, in its final instructions, the court also explained that the arguments of counsel are not evidence, and it directed the jury not to be influenced by sympathy, sentiment, prejudice or bias. Absent some clear indication to the contrary, the jury is presumed to have followed the court's instructions. *State* v. *Cromety*, supra, 102 Conn. App. 436 n.14.

The judgment is affirmed.

In this opinion the other judges concurred.