## STATE OF CONNECTICUT *v.* TRAMLUS COLVIN (14186)

Dupont, C. J., and Spear and Hennessy, Js.

---

Argued February 26—officially released August 13, 1996

*Robert J. Scheinblum*, deputy assistant state's attorney, with whom, on the brief, were *James E. Thomas*, state's attorney, and *Carl E. Taylor*, assistant state's attorney, for the appellant (state).

*Jefferson D. Jelly*, with whom was *Terence P. Sexton*, for the appellee (defendant).

HENNESSY, J. The defendant, Tramlus Colvin, was arrested and charged with possession of narcotics with intent to sell in violation of General Statutes § 21a-278 (b) and possession of narcotics with intent to sell within 1500 feet of a housing project in violation of General Statutes § 21a-278a (b). The defendant filed a motion to suppress evidence of drugs that the police seized from his automobile. The trial court, *Spada, J.*, after a hearing, granted the motion to suppress on November 2, 1994. The charges were dismissed on November 15, 1994. Also, on November 15, 1994, the court, *Miano, J.*, granted the state's motion for permission to appeal from the judgment of dismissal. On appeal, the state

claims that the trial court improperly granted the motion to suppress because the evidence was lawfully discovered in plain view in the defendant's automobile. We affirm the trial court's ruling and the trial court's judgment of dismissal.

The trial court found the following facts. On September 16, 1992, several officers who were in the area conducting an investigation observed the defendant drive to 235 Sergeant Street and park his car. They then watched the defendant walk to 91 Atwood Street, 200 feet away from his car, and sit on a stoop. The officers observed the defendant for twenty-five minutes. During their surveillance, the officers did not witness a sale of narcotics or any act giving the appearance of a sale. At the close of their surveillance, Detectives Keith Knight and Henry Martin approached the defendant. The defendant knew them as police officers, saw their side-arms and badges, and addressed one of the officers by his first name. One of the detectives ordered the defendant to accompany them to his automobile. The defendant reluctantly complied and walked with the officers to the vehicle. While standing on the sidewalk next to the defendant's automobile, Martin looked through the window of the vehicle and observed in plain view a bag containing a white substance later determined to be a narcotic substance. The officers seized the bag and charged the defendant with possession of narcotics.

On October 3, 1993, the defendant moved to suppress the evidence seized from his automobile as "fruits of an illegal search and seizure." The trial court granted the motion finding that the evidence seized was the result of an illegal "de facto" arrest. The trial court found that the defendant was under a de facto arrest because the officers ordered him to accompany them to his car and the defendant was not free to leave. It further noted that the officers did not see evidence of

drugs or drug paraphernalia near the defendant. The court found that because the police had neither probable cause nor a reasonable articulable suspicion that the defendant was engaged in illegal activity, the de facto arrest was illegal.

The sole issue on appeal is whether the trial court improperly granted the motion to suppress the evidence. The state does not claim that the trial court improperly found that the defendant was illegally de facto arrested. Rather, the state claims that even if the de facto arrest was illegal, the detective's observation of the evidence in the defendant's automobile was unconnected to that arrest. The state, therefore, argues that the trial court improperly applied the "fruit of the poisonous tree" doctrine.

The "fruit of poisonous tree" doctrine "requires courts to exclude evidence that is the product or 'fruit' of police conduct in violation of the fourth amendment." *State* v. *Ostroski*, 201 Conn. 534, 545, 518 A.2d 915 (1986); *Segura* v. *United States*, 468 U.S. 796, 804–805, 104 S. Ct. 3380, 82 L. Ed. 2d 599 (1984); *Wong Sun* v. *United States*, 371 U.S. 471, 484–88, 83 S. Ct. 407, 9 L. Ed. 2d 441 (1963). The essential purpose of the doctrine "is to deter police misconduct." *Nix* v. *Williams*, 467 U.S. 431, 446, 104 S. Ct. 2501, 81 L. Ed. 2d 377 (1984). Evidence that would not have been discovered but for the illegal actions of the police is not necessarily the fruit of the poisonous tree. *Wong Sun* v. *United States*, supra, 487–88.

The question to be resolved concerning the admissibility of derivative evidence is " 'whether, granting establishment of the primary illegality, the evidence to which instant objection is made has been come at by exploitation of [the initial] illegality or instead by means sufficiently distinguishable to be purged of the primary taint.' " *Wong Sun* v. *United States*, supra, 371 U.S. 488,

quoting J. Maguire, Evidence of Guilt (1959), p.221. In deciding whether the evidence should be suppressed, the courts "have focused upon the attenuation aspect; at what point does the nexus between the fourth amendment violation and the challenged evidence . . . become so attenuated as to dissipate the taint of the primary illegality." *State* v. *Ostroski*, supra, 201 Conn. 546.

In *Brown* v. *Illinois*, 422 U.S. 590, 603–604, 95 S. Ct. 2254, 45 L. Ed. 2d 416 (1975), the United States Supreme Court explained that the factors to be considered in determining whether evidence is sufficiently attenuated from the initial police illegality include the temporal proximity of the illegal police action and the discovery of the evidence, "the presence of intervening circumstances," and "the purpose and flagrancy of the official misconduct." See also *State* v. *Cates*, 202 Conn. 615, 621–24, 522 A.2d 788 (1987); *State* v. *Ostroski*, supra, 201 Conn. 547.

We find that application of these factors to the present case supports the conclusion that the discovery of the evidence in the defendant's vehicle was not sufficiently attenuated from the illegal arrest to be purged of the taint. First, the discovery of the evidence occurred shortly after the defendant's arrest. Second, there were no intervening circumstances between the arrest and the discovery of the contraband. Moreover, as in *State* v. *Geisler*, 222 Conn. 672, 684, 610 A.2d 1225 (1992), a continuum of police action existed in that, from the time the police ordered the defendant to go to his car until the discovery of the evidence, the officers did not allow the defendant to leave. Finally, by effectuating an illegal arrest, the police officers engaged in misconduct similar to that in *Brown* v. *Illinois*, supra, 422 U.S. 605. As in *Brown*, this illegal arrest had a quality of purposefulness: "The impropriety of the arrest was

obvious . . . . The arrest, both in design and in execution, was investigatory." Id.

Furthermore, we are unpersuaded by the state's argument that the evidence is admissible because the police could have legally viewed and seized it independent of the illegal arrest. Regardless of whether the police could have legally obtained the evidence, its discovery was not sufficiently attenuated from the misconduct. In addition, admission of this evidence would undermine the purpose of the exclusionary rule, deterring police misconduct. We conclude that the challenged evidence in this case was the tainted product of an illegal arrest and that the trial court properly granted the motion to suppress.[1]

We conclude that the trial court's granting of the defendant's motion to suppress and the subsequent judgment of dismissal were proper.

The judgment is affirmed.

In this opinion the other judges concurred.

---

[1] We need not address the defendant's arguments based on state constitutional grounds because we affirm the trial court's ruling.