STATE OF CONNECTICUT *v.* TRAMLUS COLVIN
(SC 15525)

Callahan, C. J., and Norcott, Katz, Palmer and McDonald, Js.

Argued April 24—officially released July 15, 1997

*Robert J. Scheinblum*, deputy assistant state's attorney, with whom, on the brief, were *James E. Thomas*, state's attorney, and *Carl E. Taylor*, assistant state's attorney, for the appellant (state).

*Jefferson D. Jelly*, with whom was *Terence P. Sexton*, for the appellee (defendant).

*Opinion*

CALLAHAN, C. J. The defendant, Tramlus Colvin, was charged in a two count information with possession of narcotics with intent to sell by a person who is not drug-dependent in violation of General Statutes § 21a-278 (b)[1] and with possession of narcotics with intent

---

[1] General Statutes § 21a-278 (b) provides: "Any person who manufactures, distributes, sells, prescribes, dispenses, compounds, transports with the intent to sell or dispense, possesses with the intent to sell or dispense, offers, gives or administers to another person any narcotic substance, halluci-

to sell within 1500 feet of a housing project in violation of General Statutes § 21a-278a (b).[2] On October 8, 1994, the defendant filed a motion to suppress any and all tangible evidence seized from his automobile while it was parked on Sergeant Street in Hartford. On November 2, 1994, in an oral ruling, the trial court granted the defendant's motion to suppress, to which the state excepted. On November 15, 1994, the charges against the defendant were dismissed, and the trial court

nogenic substance other than marijuana, amphetamine-type substance, or one kilogram or more of a cannabis-type substance except as authorized in this chapter, and who is not at the time of such action a drug-dependent person, for a first offense shall be imprisoned not less than five years nor more than twenty years; and for each subsequent offense shall be imprisoned not less than ten years nor more than twenty-five years. The execution of the mandatory minimum sentence imposed by the provisions of this subsection shall not be suspended except the court may suspend the execution of such mandatory minimum sentence if at the time of the commission of the offense (1) such person was under the age of eighteen years or, (2) such person's mental capacity was significantly impaired but not so impaired as to constitute a defense to prosecution."

[2] General Statutes § 21a-278a (b) provides: "Any person who violates section 21a-277 or 21a-278 by manufacturing, distributing, selling, prescribing, dispensing, compounding, transporting with the intent to sell or dispense, possessing with the intent to sell or dispense, offering, giving or administering to another person any controlled substance in or on, or within one thousand five hundred feet of, the real property comprising a public or private elementary or secondary school, a public housing project or a licensed child day care center, as defined in section 19a-77, that is identified as a child day care center by a sign posted in a conspicuous place shall be imprisoned for a term of three years, which shall not be suspended and shall be in addition and consecutive to any term of imprisonment imposed for violation of section 21a-277 or 21a-278. To constitute a violation of this subsection, an act of transporting or possessing a controlled substance shall be with intent to sell or dispense in or on, or within one thousand five hundred feet of, the real property comprising a public or private elementary or secondary school, a public housing project or a licensed child day care center, as defined in section 19a-77, that is identified as a child day care center by a sign posted in a conspicuous place. For the purposes of this subsection, 'public housing project' means dwelling accommodations operated as a state or federally subsidized multifamily housing project by a housing authority, nonprofit corporation or municipal developer, as defined in section 8-39, pursuant to chapter 128 or by the Connecticut Housing Authority pursuant to chapter 129."

granted the state's motion for permission to appeal from the judgment of dismissal. The Appellate Court affirmed the trial court's granting of the defendant's motion to suppress and the subsequent judgment of dismissal. *State* v. *Colvin*, 42 Conn. App. 537, 542, 680 A.2d 1360 (1996). We granted the state's petition for certification to consider whether the Appellate Court, under the circumstances of this case, properly concluded that the cocaine discovered in the defendant's automobile must be suppressed. *State* v. *Colvin*, 239 Conn. 922, 682 A.2d 1007 (1996).[3] We reverse the judgment of the Appellate Court.

The following facts, which are recited in the Appellate Court's opinion, are relevant to the determination of the issue presented in this case. "On September 16, 1992, several [Hartford police] officers who were in the area conducting an investigation observed the defendant drive to 235 Sergeant Street and park his car. They then watched the defendant walk to 91 Atwood Street, 200 feet away from his car, and sit on a stoop. The officers observed the defendant for twenty-five minutes. During their surveillance, the officers did not witness a sale of narcotics or any act giving the appearance of a sale. At the close of their surveillance, Detectives Keith Knight and Henry Martin approached the defendant. The defendant knew them as police officers, saw their sidearms and badges, and addressed one of the officers by his first name. One of the detectives ordered the defendant to accompany them to his automobile. The defendant reluctantly complied and walked with the officers to the vehicle. While standing on the sidewalk next to the defendant's automobile, Martin looked through the window of the vehicle and observed

---

[3] We granted the state's petition for certification to appeal limited to the following question: "Whether the Appellate Court, under the circumstances of this case, properly ruled that cocaine discovered in the defendant's automobile must be suppressed?" *State* v. *Colvin*, supra, 239 Conn. 922.

in plain view a bag containing a white substance later determined to be a narcotic substance. The officers seized the bag and charged the defendant with possession of narcotics." *State* v. *Colvin*, supra, 42 Conn. App. 539.

On the basis of these facts, the trial court concluded that the defendant's detention, while being escorted to his automobile, was a de facto arrest. The trial court then stated: "[T]here appears to now be fruits of a poisonous tree which apparently have to be suppressed, and so the court concludes that . . . those items . . . are suppressed for purposes of this trial." Subsequently, on November 15, 1994, the trial court dismissed the charges against the defendant and granted the state's motion for permission to appeal.

On appeal, the Appellate Court concluded that the trial court properly granted the defendant's motion to suppress and the subsequent judgment of dismissal. *State* v. *Colvin*, supra, 42 Conn. App. 542. The Appellate Court based its decision on the state's inability to prove that the discovery of the narcotics was sufficiently attenuated from the allegedly unlawful arrest to cleanse it of its taint. The attenuation doctrine, as the Appellate Court noted, contains three factors that courts use to determine whether evidence is sufficiently attenuated from the alleged illegality to cleanse it of its taint: (1) "the temporal proximity of the illegal police action and the discovery of the evidence"; (2) "the presence of intervening circumstances"; and (3) "the purpose and flagrancy of the official misconduct." (Internal quotation marks omitted.) Id., 541; see *Brown* v. *Illinois*, 422 U.S. 590, 603–604, 95 S. Ct. 2254, 45 L. Ed. 2d 416 (1975); *State* v. *Cates*, 202 Conn. 615, 621, 522 A.2d 788 (1987).

With respect to the three factors of the attenuation doctrine, the Appellate Court stated: "[A]pplication of these factors to the present case supports the conclu-

sion that the discovery of the evidence in the defendant's vehicle was not sufficiently attenuated from the illegal arrest to be purged of the taint. First, the discovery of the evidence occurred shortly after the defendant's arrest. Second, there were no intervening circumstances between the arrest and the discovery of the contraband. Moreover, as in *State* v. *Geisler*, 222 Conn. 672, 684, 610 A.2d 1225 (1992), a continuum of police action existed in that, from the time the police ordered the defendant to go to his car until the discovery of the evidence, the officers did not allow the defendant to leave. Finally, by effectuating an illegal arrest, the police officers engaged in misconduct similar to that in *Brown* v. *Illinois*, supra, 422 U.S. 605. As in *Brown*, this illegal arrest had a quality of purposefulness: 'The impropriety of the arrest was obvious . . . . The arrest, both in design and in execution, was investigatory.' Id." *State* v. *Colvin*, supra, 42 Conn. App. 541–42.

On appeal, the state contends that "the trial court should not have suppressed the cocaine because it was not obtained by exploitation of [the defendant's] detention, but rather, by virtue of the fact that it was exposed in plain view in a car parked on a public road."[4] The defendant argues, in support of the trial court's suppression of the cocaine, that the evidence was derived from his illegal seizure, and, therefore, should be considered fruit of the poisonous tree. See *Wong Sun* v. *United States*, 371 U.S. 471, 83 S. Ct. 407, 9 L. Ed. 2d 441 (1963). Additionally, he claims that the evidence is not admissible by reason of any recognized doctrine, such as: (1) independent source; see *Silverthorne Lumber Co.* v. *United States*, 251 U.S. 385, 392, 40 S. Ct. 182, 64 L. Ed. 319 (1920); (2) inevitable discovery; see *Nix* v. *Williams*, 467 U.S. 431, 444, 104 S. Ct. 2501, 81 L. Ed.

---

[4] The parties have agreed to assume, arguendo, that there was an illegal seizure of the defendant on Atwood Street. Accordingly, we have no occasion to consider the trial court's finding that the police action was a de facto arrest.

2d 377 (1984); or (3) attenuation. See *Brown* v. *Illinois,* supra, 422 U.S. 603. We agree with the state that the seizure was not the result of the defendant's detention, and, therefore, conclude that the trial court incorrectly granted the defendant's motion to suppress. Accordingly, we reverse the judgment of the Appellate Court.

Our standard of review of a trial court's findings and conclusions in connection with a motion to suppress is well defined. A finding of fact will not be disturbed unless it is "clearly erroneous in view of the evidence and pleadings in the whole record . . . ." Practice Book § 4061; *State* v. *Oquendo,* 223 Conn. 635, 645, 613 A.2d 1300 (1992); *State* v. *Kyles,* 221 Conn. 643, 660, 607 A.2d 355 (1992). "[W]here the legal conclusions of the court are challenged, we must determine whether they are legally and logically correct and whether they find support in the facts set out in the memorandum of decision . . . ." *Pandolphe's Auto Parts, Inc.* v. *Manchester,* 181 Conn. 217, 221, 435 A.2d 24 (1980); see also *State* v. *Trine,* 236 Conn. 216, 225, 673 A.2d 1098 (1996).

"Under the exclusionary rule, evidence must be suppressed if it is found to be the 'fruit' of prior police illegality. *Wong Sun* v. *United States,* supra, [371 U.S.] 485. All evidence is not, however, a 'fruit of the poisonous tree' simply because it would not have been discovered but for the illegal action of law enforcement officials. Id., 487–88; see *State* v. *Villafane,* 171 Conn. 644, 655, 372 A.2d 82 (1976), cert. denied, 429 U.S. 1106, 97 S. Ct. 1137, 51 L. Ed. 2d 558 (1977), overruled in part on other grounds, *State* v. *Stepney,* 191 Conn. 233, 464 A.2d 758 (1983), cert. denied, 465 U.S. 1084, 104 S. Ct. 1455, 79 L. Ed. 2d 772, reh. denied, 466 U.S. 954, 104 S. Ct. 2163, 80 L. Ed. 2d 547 (1984). 'Rather, the more apt question in such a case is "whether, granting establishment of the primary illegality, the evidence to which instant objection is made has been come at by exploita-

tion of that illegality or instead by means sufficiently distinguishable to be purged of the primary taint." ' *Wong Sun* v. *United States*, supra, 488, quoting Maguire, Evidence of Guilt (1959) p. 221." *State* v. *Cates*, 202 Conn. 615, 619–20, 522 A.2d 788 (1987). The initial determination is, therefore, whether "the challenged evidence is in some sense the product of illegal government activity." *United States* v. *Crews*, 445 U.S. 463, 471, 100 S. Ct. 1244, 63 L. Ed. 2d 537 (1980); see also *State* v. *Miller*, 29 Conn. App. 207, 216, 614 A.2d 1229 (1992), aff'd, 227 Conn. 363, 630 A.2d 1315 (1993) ("[b]ecause the seizure of the gun did not owe its origin in material part to the [illegal] *Terry* stop, the *Terry* stop cannot provide a basis for excluding the gun from evidence").

Our decision in this case is controlled by our previous decision in *State* v. *Graham*, 200 Conn. 9, 509 A.2d 493 (1986). In *Graham*, "two Waterford police officers went to the defendant's home and searched the premises pursuant to a 'search and seizure warrant.' Although the police did not find any of the stolen property anticipated, the defendant was arrested at that time. While they were leaving the premises, the officers saw the defendant's car across the street parked in a lot accessible to the public. They walked over to the car and looked into the rear seat with the aid of a flashlight. On the seat they noticed a rope which matched the description of the one used in the robbery. On the basis of this observation, they obtained a warrant and returned later to seize the rope." Id., 19.

The defendant in *Graham* argued that his arrest was unlawful, that the discovery of the rope was the "fruit" of that unlawful arrest and, therefore, that the rope must be suppressed. We concluded, however, that "[e]ven if we were to assume, without deciding, that the arrest of the defendant was illegal, we cannot agree with the defendant that the rope is inadmissible. The plain view 'search' of the car was wholly unconnected with the

arrest other than by the fact that it occurred shortly thereafter. The arrest did not generate a confession leading the police to the rope in the car; cf. *Brown* v. *Illinois*, [supra, 422 U.S. 590]; nor did the search of the car take place 'incident to arrest.' Cf. *Chimel* v. *California*, 395 U.S. 752, 89 S. Ct. 2034, 23 L. Ed. 2d 685 (1969) . . . . We conclude, therefore, that the rope was not the 'fruit' of an allegedly illegal arrest." (Citation omitted.) *State* v. *Graham*, supra, 200 Conn. 20.

We find the same to be true in the present case. The trial court heard no evidence that would support a conclusion that the discovery of the cocaine was the product of the allegedly unlawful arrest and the trial court made no such finding. More specifically, there is no evidence of any exchange between the defendant and the police officers during the allegedly unlawful detention that might be construed as causing the police officer to look into the defendant's automobile.[5] There is clear evidence, moreover, that the police officers knew which automobile was the defendant's before approaching him on Atwood Street. As in *Graham*, the allegedly unlawful arrest is not causally connected with the discovery of the evidence.

The defendant, however, attempts to distinguish *Graham* by focusing on the fact that the officers in *Graham*

---

[5] This lack of evidence favors the state. In *Alderman* v. *United States*, 394 U.S. 165, 183, 89 S. Ct. 961, 22 L. Ed. 2d 176 (1969), the United States Supreme Court discussed the proper allocation of burdens in a motion to suppress the fruit of a poisonous tree. The court stated: "The United States concedes that when an illegal search has come to light, it has the ultimate burden of persuasion to show that its evidence is untainted. But at the same time petitioners acknowledge that *they must go forward with specific evidence demonstrating taint.* '[T]he trial judge must give opportunity, however closely confined, to the accused to prove that a substantial portion of the case against him was a fruit of the poisonous tree. This leaves ample opportunity to the Government to convince the trial court that its proof had an independent origin.' *Nardone* v. *United States*, 308 U.S. 338, 341, [60 S. Ct. 266, 84 L. Ed. 307] (1939)." (Emphasis added.) *Alderman* v. *United States*, supra, 183. The defendant in the case at issue here has not sustained

had a valid search warrant for the defendant's dwelling and that the police activity in that case, including the viewing of the rope, was surrounded by an air of legitimacy. The defendant contrasts this to the "unsavory sense of purposefulness" in the present case. The defendant's characterizations of the action of the police, however, are inapposite to the issue before us. We acknowledge that "the purpose and flagrancy of the official misconduct" should be considered when evaluating an attenuation argument. It is not the state's claim, however, that the discovery of the cocaine was sufficiently attenuated to divest the discovery from the taint of the allegedly unlawful arrest. The state argues, instead, that the discovery of the evidence simply was not the result of the allegedly unlawful police conduct.

In response to the state's contention that the "plain view" doctrine is applicable to this case, the defendant argues that "[s]ince the police officers came to be in a position to view the contraband because of the illegal arrest, the resultant seizure of the contraband must be suppressed." For the purposes of this argument, the defendant presumes that the illegal arrest placed the officers next to the defendant's car. As noted previously, there is no evidence in the record to support this assumption. The only link between the allegedly unlawful arrest and the discovery of the cocaine that is supported by the evidence is that the defendant was allegedly being unlawfully detained when the police observed the cocaine. The defendant, however, has provided no authority to support the contention that the concurrent nature of two causally distinct events, in and of itself, is a sufficient basis in this case to conclude that the discovery of the cocaine was tainted by the allegedly unlawful arrest.

his burden of production. There is no evidence indicating a causal connection between the arrest and the discovery of the cocaine.

Additionally, "[t]he defendant's position contravenes the exclusionary rule's purpose of ensuring fairness and balancing the interests of the state and the defendant. 'Fairness can be assured by placing the State and the accused in the same positions they would have been in had the impermissible conduct not taken place.' *Nix* v. *Williams*, [supra, 467 U.S. 447]. 'When the challenged evidence has an independent source, exclusion of such evidence would put the police in a worse position than they would have been in absent any error or violation.' Id., 443." *State* v. *Rodriguez*, 239 Conn. 235, 250, 684 A.2d 1165 (1996).

If we were to adopt the defendant's position and suppress the cocaine as the fruit of an illegal arrest, we would place the police in a worse position than they would have been if the allegedly unlawful police conduct had not occurred, because if the allegedly unlawful arrest had not occurred, the police would have been free to approach the defendant's automobile and view the cocaine.[6] *Nix* v. *Williams*, supra, 467 U.S. 447. In essence, the defendant asks us to conclude that the allegedly unlawful arrest made the police officers' presence on the sidewalk adjacent to the car unlawful. We decline to adopt such a position.

We determine that the cocaine in this instance was not discovered as a result of the allegedly unlawful arrest. The police had a perfect right to be where they were and to observe the cocaine, notwithstanding any arrest. The suppression of the cocaine, therefore, is not

---

[6] "The police, 'no less than any other citizen,' have a right to be on a public street, 'stand beside the defendant's car and peer in.' *State* v. *Kuskowski*, 200 Conn. 82, 85, 510 A.2d 172 (1986)." *State* v. *Sailor*, 33 Conn. App. 409, 416, 635 A.2d 1237, cert. denied, 239 Conn. 911, 642 A.2d 1208 (1994). "It is well established . . . that if a police officer is in a public area and . . . peer[s] into a vehicle through a window, his action does not constitute a 'search' and, as a result, is not considered violative of the car owner's fourth amendment rights." *State* v. *Graham*, supra, 200 Conn. 20.

warranted because it was not seized as a consequence of police misconduct.[7] We conclude, therefore, that the trial court improperly granted the defendant's motion to suppress because there is no evidence to establish a causal connection between the allegedly unlawful arrest and the discovery of the cocaine.

The judgment of the Appellate Court is reversed and the case is remanded to that court with direction to remand the case to the trial court with direction to deny the motion to suppress and to reinstate the information and proceed according to law.[8]

In this opinion NORCOTT, PALMER and MCDONALD, Js., concurred.

KATZ, J., dissenting. I disagree with the majority opinion that the seizure of the narcotics was not the result of the defendant's detention. Because the evidence was seized as a consequence of police misconduct and its discovery was not sufficiently attenuated to divest it of the taint of the defendant's unlawful arrest, I would affirm the judgment of the Appellate Court.

The exclusionary rule is a judicially prescribed remedial measure that prohibits the introduction in a

[7] On appeal, the defendant makes the additional claim that article first, § 7, of the Connecticut constitution provides broader protection with respect to the suppression of fruits of unlawful searches and seizures than do the fourth and fourteenth amendments to the United States constitution. The defendant, however, provides no support for his claim that the Connecticut constitution should be interpreted to require suppression of evidence that was not the product of an allegedly unlawful arrest. We, therefore, decline to address this issue. *State* v. *Tweedy*, 219 Conn. 489, 510 n.17, 594 A.2d 906 (1991).

[8] During the pendency of this appeal, it has come to our attention that the defendant, whose actions on September 16, 1992, are the subject of this case, was charged with a crime that did not exist on that date, i.e., possession of narcotics with intent to sell within 1500 feet of a housing project in violation of § 21a-278a (b). See Public Acts 1992, No. 92-82 (effective October 1, 1992). Because this issue was not briefed or argued before us, we do not address it, but remand the case with the understanding that this ex post facto issue will be addressed on remand.

criminal prosecution of evidence obtained by law enforcement officers through unconstitutional means. "As with any remedial device, the application of the rule has been restricted to those areas where its remedial objectives are thought most efficaciously served." *United States* v. *Calandra*, 414 U.S. 338, 348, 94 S. Ct. 613, 38 L. Ed. 2d 561 (1974). The rule reaches primary evidence obtained as a direct result of an illegal search or seizure; *Weeks* v. *United States*, 232 U.S. 383, 398, 34 S. Ct. 341, 58 L. Ed. 652 (1914); as well as evidence later discovered and found to be derivative of an illegality or "fruit of the poisonous tree." *Nardone* v. *United States*, 308 U.S. 338, 341, 60 S. Ct. 266, 84 L. Ed. 307 (1939). Evidence is not to be excluded, however, if the connection between the illegal police conduct and the discovery and seizure of the evidence is "so attenuated as to dissipate the taint." Id. When evidence is obtained as a direct result of an unconstitutional search or seizure, it is subject to exclusion if it is "tainted" by the prior illegality, which determination depends on whether the challenged evidence was "come at by exploitation of [the initial] illegality or instead by means *sufficiently distinguishable* to be purged of the primary taint." (Emphasis added; internal quotation marks omitted.) *Wong Sun* v. *United States*, 371 U.S. 471, 488, 83 S. Ct. 407, 9 L. Ed. 2d 441 (1963).

The Supreme Court of the United States has never held that evidence is to be suppressed as " 'fruit of the poisonous tree' simply because it would not have come to light but for the illegal actions of the police." Id.; *Rawlings* v. *Kentucky*, 448 U.S. 98, 106, 100 S. Ct. 2556, 65 L. Ed. 2d 633 (1980); *Brown* v. *Illinois*, 422 U.S. 590, 599, 95 S. Ct. 2254, 45 L. Ed. 2d 416 (1975). By the same token, those Supreme Court cases make it clear that evidence will not be excluded as "fruit" unless the illegality is *at least* the "but for" cause of the discovery of

the evidence. *Segura* v. *United States,* 468 U.S. 796, 815, 104 S. Ct. 3380, 82 L. Ed. 2d 599 (1984).

What the majority opinion ignores in the present case is the "but for" language that is essential to the holding of the previously cited Supreme Court cases. Although the court in *Wong Sun* v. *United States,* supra, 371 U.S. 488, rejected a "but for" test for determining whether to suppress evidence gathered following a fourth amendment violation, that court nevertheless imposed the test as a threshold matter to the issue of whether the seized evidence was a "fruit." After the court determines that, but for the illegality, the evidence "would not have come to light," only then does the court inquire into whether the evidence is tainted. Id. The focus turns to whether the prior illegality and the seizure of the evidence in question were so interconnected as to render the evidence tainted, or whether the connection between the illegality and the seizure of the evidence was so attenuated as to render the evidence untainted.

In the present case, the majority relies on the state's argument that the discovery of the evidence was not at all connected to the illegal seizure of the defendant because, as in *State* v. *Graham,* 200 Conn. 9, 20, 509 A.2d 493 (1986), the police knew which automobile belonged to the defendant, and, therefore, presumably would have looked into the car even if they had not arrested the defendant. The majority's treatment of the issue, however, is couched in language generally used to invoke exceptions to the exclusionary rule. See *Nix* v. *Williams,* 467 U.S. 431, 448, 104 S. Ct. 2501, 81 L. Ed. 2d 377 (1984); see also S. LaCount & A. Girese, "The 'Inevitable Discovery' Rule, An Evolving Exception to the Constitutional Exclusionary Rule," 40 Albany L. Rev. 483 (1976); R. Maguire, "How to Unpoison the Fruit—The Fourth Amendment and the Exclusionary Rule," 55 J. Crim. L. Criminology & Police Sci. 307, 313–17 (1964). Such analysis implicitly recognizes that

a determination has already been made that the seizure *was* connected to the initial illegality.[1]

In my view, the proper analysis should focus on whether the seizure of the evidence owed its origin in material part to the seizure of the defendant. The trial court found that "[o]ne of the detectives ordered the defendant to accompany them to his automobile. The defendant reluctantly complied and walked with the officers to the vehicle." *State* v. *Colvin*, 42 Conn. App. 537, 539, 680 A.2d 1360 (1996). Under the circumstances of this case, the trial court found that this was a sufficient causal connection between the arrest and the discovery of the evidence. I see no reason to disagree with that determination as a matter of law, based upon the facts the trial court reasonably could have found. See *Segura* v. *United States*, supra, 468 U.S. 806 ("if all the contents of the apartment were 'seized' at the time of the illegal entry and securing [of the premises], presumably the evidence [being] challenged would be suppressible as primary evidence obtained as a direct result of that entry"). This is not a case in which the chain between the challenged evidence and the primary illegality is long or in which the linkage is being demonstrated by sophistic argument.

Indeed, relying on the various factors specified by the Supreme Court to assess attenuation, I consider the record in this case to be devoid of any evidence of intervening circumstances to otherwise break the causal connection. The record supports the temporal proximity of the arrest and the seizure of the evidence, the first factor generally examined by the Supreme Court when faced with the question of attenuation. *Brown* v. *Illinois*, supra, 422 U.S. 604. Another factor considered by the Supreme Court is whether there

---

[1] This is the same procedural step that was passed over by the court in *State* v. *Graham*, supra, 200 Conn. 20.

existed intervening circumstances, such as an intervening lawful arrest; see *Johnson* v. *Louisiana*, 406 U.S. 356, 365, 92 S. Ct. 1620, 32 L. Ed. 2d 152 (1972); or consent. See *State* v. *Fortier*, 113 Ariz. 332, 335–36, 553 P.2d 1206 (1976) (where record indicated defendant voluntarily opened trunk of car without request by officer, evidence was not seized through exploitation of illegal stop). In the present case, there is no evidence of any break in the chain leading from the defendant's arrest to the seizure of the evidence. Accordingly, I agree with the trial court that there is no antidote to the poison in this fruit.

Although there may indeed have been different theories upon which the state could have relied to circumvent the fourth amendment violation, including, but not limited to, inevitable discovery, the trial court rejected the state's proposition in that regard and expressly found that the state had not " 'demonstrate[d] that the lawful means which made discovery inevitable were possessed by the police and were being actively pursued prior to the occurrence of the constitutional violation.' "

Therefore, I respectfully dissent.