[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION RE: MOTION TO SUPPRESS
On April 10, 2001 the defendant, Amy Marinoccio, was arrested and charged with possession of less than four ounces of marijuana in violation of General Statutes § 21a-279 (c), possession of drug paraphernalia in violation of General Statutes § 21a-267 (a) and being a minor in possession of alcohol in violation of General Statutes §30-89 (b). On June 11, 2001 the defendant filed a notion to suppress. On August 3, 2001 an evidentiary hearing was conducted and the defendant filed two supporting memoranda of law. The state also filed a brief.
The court finds the following facts: On April 10, 2001, Sgt. Michael Surprenant of the Plainfield Police Department was on patrol working second shift. Shortly before 10 p.m., he performed a regular routine patrol check of the Plainfield Industrial Park. He patrolled this industrial park regularly because there had been several incidents of underage drinking, vandalism and narcotic activity within the industrial CT Page 12120 park. The Plainfield Police Department had been specifically requested to do routine checks by businesses in the industrial park that had been subjected to criminal activity. There are two entrances to the Plainfield Industrial Park. Each entrance has a sign posted indicating that access is restricted to authorized vehicles. No industrial park businesses were open at this time. While patrolling, Sgt. Surprenant observed a stopped 1999 Chevrolet Cavalier on a cul-de-sac, part of a main highway, off the main roads within the industrial park. The operator was not committing any traffic violation.
After observing the Cavalier, Sgt. Surprenant approached it, parked his cruiser facing the vehicle and partially in front of it and put his spotlight on it. He didn't activate his flashing lights. He gave no orders and did not display a weapon. The officer was dressed in uniform and carrying a weapon.
Upon approaching the Cavalier on foot, he observed the rear passengers to place something on the floor of the vehicle. While standing at the side of the Cavalier, Sgt. Surprenant observed a bottle of Absolut vodka on the rear floor of the vehicle. He also observed that the four people in the vehicle all appeared to be underage. The defendant sat in the rear driver side passenger seat. She did not own or operate the Cavalier.
After observing the bottle of Absolut vodka, Sgt. Surprenant spoke to the operator away from the vehicle and was given consent to search. Officers Muench and Shaw arrived and assisted. The consent search yielded marijuana, alcohol and a smoking pipe. The evidence was seized and all four occupants were arrested on the same three charges previously noted. The court will make additional findings of fact herein as required to discuss issues raised by the parties.
The defendant argues that any reasonable person would not feel free to leave when a police officer blocks his or her car with his marked police vehicle and illuminates a spotlight on it. It was at this point that the defendant argues that a seizure occurred and that the officer did not possess at the time the requisite reasonable articulation that a crime had been or was about to be committed. Pursuant to these principles, the defendant argues that the officer illegally seized the vehicle in which she was a passenger and therefore all statements and evidence procured as a result of this illegal seizure must be suppressed.
The state argues that the police officer's approach to an already stopped vehicle did not constitute a seizure or if, in the alternative, a seizure took place at that time, the officer had sufficient reasonable grounds to do so. The state further argues that if the search was improper, as a passenger in the vehicle, the defendant has no possessory CT Page 12121 interest in it and thus no reasonable expectation of privacy in the area of the vehicle searched. She is thus precluded from challenging the validity of the search.
Because the Connecticut constitution affords more protection against unreasonable seizure than that afforded by the federal constitution, a person is considered to have been seized when a show of police authority leads her to believe that she is unable to leave. See State v. Oquendo,223 Conn. 635, 613 A.2d 1300 (1992). The court's opinion in Oquendo
reaffirms common law precedent that a seizure occurs even in a consensual encounter with the police, if ". . . on the basis of a show of authority by the police officer, a reasonable person in the defendant's position would have believed that he was not free to leave." State v. Ostroski,186 Conn. 287 (1982), cited in Oquendo, 223 Conn. at 653.
The facts that led the Oquendo court to determine that a seizure had indeed taken place are analogous to those of this case. The officer inOquendo ". . . was on patrol in a marked police cruiser. He drove past the defendant . . . turned around and stopped approximately twenty feet away from them. [The officer] then stepped out of the cruiser and stood next to the driver's door. . . ." Oquendo, 223 Conn. at 652-53. The police officer in Oquendo did not activate his lights nor order the defendant to halt. The officer was, however, "dressed in full uniform and visibly armed with a gun and nightstick." Id. The Oquendo court determined that this show of authority was sufficient to constitute a seizure under the strict standards of Article I §§ 7 and 9 of the Connecticut constitution. See also, State v. Donahue, 251 Conn. 636,642-43 (finding that seizure had occurred when the police officer pulled up behind the defendant's car and activated flashing lights).
In this case, the defendant and her friends were seated in a parked car when the officer's vehicle pulled in front of them at an angle, partially blocking its path. The uniformed and visibly armed officer activated a spotlight and trained it on the defendant and the other occupants before approaching the vehicle. The court finds that this show of authority rises to the level of a seizure: a reasonable person in similar circumstances would have believed that she was not free to leave. The court concludes that the investigative stop took place at this point and not as the state argues, after Sgt. Donahue approached the vehicle and saw the bottle of vodka.
When Sgt. Surprenant seized the defendant and the other passengers of the automobile, the court finds he did not possess the requisite reasonable articulable suspicion that a crime had been or was about to be committed. "Reasonable and articulable suspicion is an objective standard that focuses not on the actual state of mind of the police officer, but CT Page 12122 on whether a reasonable person, having the information available to and known by the police, would have had that level of suspicion. . . . In justifying the particular intrusion the officer must be able to point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant that intrusion." Statev. Gant, 231 Conn. 43, 65 (1995). See also, State v. Donahue, supra,251 Conn. at 643-44. ("In determining whether the detention was justified in a given case, a court must consider if based upon the whole picture the detaining officers [had] a particularized and objective basis for suspecting the particular person stopped of criminal activity. . . . A court reviewing the legality of a stop must therefore examine the specific information available to the police officer at the time of the initial intrusion and any rational inferences to be derived therefrom. . . ." See further, State v. Hammond, Conn. Supreme Court, Docket No. 16424, Katz, J. (August 21, 2001)
When Sgt. Surprenant seized the Cavalier, no one was outside the vehicle. The passengers and the driver were all inside the car. The car was parked on a public road. Sgt. Surprenant testified that the crime he believed was being committed was criminal trespass. However, the officer did not charge anyone with criminal trespass.
At the hearing, the state elicited testimony from the officer that, at the time of the defendant's detention and arrest, the businesses in the industrial park were closed and that there had been a report of increased crime — criminal mischief, drinking and narcotics use — in the industrial park. Sgt. Surprenant testified that this was the reason for his patrolling the industrial park. Nevertheless, pursuant to Statev. Donahue, supra, this information was an insufficient basis to detain the defendant. In Donahue, the state claimed "that the following five factors produced a reasonable suspicion that the defendant [in this case] was engaged or about to engage in criminal activity: (1) he was driving in a deserted area late at night; (2) he made an abrupt turn into the parking lot; (3) he pulled into an empty, unlit parking lot of an establishment that had closed for the evening; (4) his vehicle was in an area that had experienced a rise in criminal activity; and (5) his behavior was consistent with the type of behavior that often preceded the criminal activity [that officer] was out on patrol investigating." Id. At 647-48.
In Donahue, the Connecticut Supreme Court held that these reasons were insufficient to detain an individual and that a detention based on those factors was in fact illegal. Id. at 648.
The court finds that a "No Unauthorized Vehicles" sign coupled with the presence of an automobile on a public road did not provide Sgt. Surprenant CT Page 12123 with a reasonable articulable suspicion that the crime of criminal trespass was occurring. The officers' testimony showed that there were no "No Trespassing Signs" posted at the entrances to the industrial park. There were no posted signs indicating the industrial park was closed at sunset, dusk or any other time. There was no fencing, ropes or wires precluding entrance to the industrial park. There was only a vague sign indicating "No Unauthorized Vehicles." However, there was nothing defining what an unauthorized vehicle is. Officers testified that there is a day care center and other businesses that civilian cars would be entering — thus there is no one particular type of car that could be considered unauthorized." The defendants were parked on a public road and there was no evidence from Sgt. Surprenant's vantage point, that any criminal activity was occurring or about to occur.
Significantly, Officer Michael Shaw testified that when on patrol, he has come upon couples engaged in conversations sitting in their cars in the industrial park. Importantly, he testified that he never believed this to constitute a crime as he had never arrested anyone for being parked on a public road in the industrial park. Based upon Oquendo and Donahue, this court concludes that the totality of circumstances in this case does not reach the level of a reasonable suspicion found in precedents to justify the seizure and subsequent search.
Finally, as the state points out, the defendant has no standing to object to the officer's search of the automobile based on the owner's consent to search. And in fact, the defendant claims no expectation of privacy over the vehicle. Nevertheless, the court finds that any alleged contraband must be suppressed because it was discovered pursuant to the illegal seizure of the defendant. "Under the exclusionary rule, evidence must be suppressed if it is found to be the "fruit" of prior police illegality." State v. Colvin, 241 Conn. 650, 656 (1997). The purpose of the exclusionary rule is to penalize law enforcement officials by suppressing evidence obtained by illegal means in order to deter police conduct that tramples on the fourth amendment rights of citizens." Statev. Daugaard, 32 Conn. App. 483, 501 (1993).
Through application of the "fruit of the poisonous tree, u doctrine, the exclusionary rule has been used to exclude evidence which derives from an illegal arrest, search or seizure. Nardone v. United States,308 U.S. 338 (1939); Silverthorne Lumber Co. v. United States, 251 U.S. 385
(1939)
As stated above, the court finds that the defendant was illegally detained. Therefore, under the exclusionary rule, all evidence seized pursuant to this constitutional violation must be suppressed. See Statev. Hammond, Conn. Supreme Court, Docket No. 16424, Katz, J., (August 21, CT Page 12124 2001).
The motion to suppress is granted.
Potter, J.